Frances A. JOHNS, Judah L. Johns, By and Through his mother and best friend Frances A. Johns, and Jannah R. Johns, By and Through her mother and best friend Frances A. Johns, Plaintiffs,

v.

TOWN OF EAST HAMPTON, Town of East Hampton Police Department, Richard Faulhaber individually and in his official capacity as Police Detective/Officer/Sergeant, Stanton Barbour Bullock ("Tony Bullock") individually and in his official capacities as Town Supervisor and as Police Commissioner, and Thomas L. Scott, in his official capacity as Police Chief and individually, and Does 1–10, inclusive, Defendants.

No. 95–CV–4575 (JS).

United States District Court,
E.D. New York.

Sept. 20, 1996.

Patricia Weiss, Patricia Weiss, P.C., Sag Harbor, NY, for Plaintiffs.

Richard C. Cahn, Joel M. Markowitz, Cahn Wishod & Lamb, LLP, Melville, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

In the instant civil-rights action brought under 42 U.S.C. § 1983, plaintiffs Frances A. Johns (hereinafter "Mrs. Johns"), Judah L. Johns (Mrs. Johns' minor son, hereinafter "Judah"), and Jannah R. Johns (Mrs. Johns' minor daughter, hereinafter "Jannah") allege that, on August 23, 1994, defendant Richard Faulhaber, a police detective employed by defendant Town of East Hampton Police Department, unlawfully entered plaintiffs' home and interrogated Judah in his bedroom without his mother's knowledge or consent. In addition to this incident, plaintiffs allege constitutional violations resulting from the Town of East Hampton's failure to investigate properly this incident and discipline Detective Faulhaber, and subsequent retaliatory conduct against the plaintiffs for filing a civilian complaint against Detective Faulhaber. The following parties are named as defendants in this action: (a) the Town of East Hampton; (b) the Town of East Hampton Police Department; (c) Police Detective Faulhaber (sued in both his individual and official capacities); (d) Town Supervisor and Police Commissioner Stanton Barbour Bullock (sued in both his individual and official capacities); (e) Police Chief Thomas L. Scott (sued in both his individual and official capacities); and (f) John Does 1–10, which is intended to designate other members of the Town of East Hampton Police Force whose identities have not yet been determined.

Pending before the Court are two separate motions. First, defendants move to dismiss all of plaintiffs' claims except for the Fourth Amendment claim against defendant Faulhaber arising out of his alleged entry into and search of Judah's bedroom. Second, plaintiffs cross-move for leave to file an amended complaint consistent with the Court's instructions on the motion to dismiss.

## FACTUAL BACKGROUND

The allegations of the plaintiffs' complaint center around three separate transactions: (a) the entry by Faulhaber into the Johns' home on the morning of August 23, 1994, and his alleged search of Judah's room and interrogation of Judah outside the presence of his mother; (b) the filing by Mrs. Johns of a civilian complaint report on September 15, 1994 in connection with the foregoing incident, and the disposition of her complaint; and (c) the alleged "retaliation" against Mrs. Johns and her family for the filing of the civilian complaint and for otherwise making public statements concerning the underlying incident.

### A. The Search and Interrogation

According to plaintiffs' complaint, Detective Faulhaber first went to the Johns' home on the evening of August 20, 1994 in the company of another police officer. Faulhaber asked for Mrs. Johns and Judah, but was told by a visitor that neither was home. When Mrs. Johns later returned to her residence, she called the Police Department and inquired of the sergeant on duty concerning the purpose of Faulhaber's visit. The sergeant was unable to provide any information.

On the morning of August 23, 1994, shortly after Mrs. Johns had left for work, Faulhaber returned alone to the Johns' residence. Jannah, Mrs. Johns' then–13–year–old daughter, responded to Faulhaber's knock on the door, and was told that the detective wished to speak to her then–15–year–old brother, Judah. Jannah advised Faulhaber that Judah was downstairs in his bedroom still asleep. Faulhaber asked where the bedroom was and Jannah told him its location.

The Complaint alleges that without the permission of any occupant of the Johns' home, Faulhaber walked through the house to Judah's room, attempted to open the door but found it locked, pounded on the door until Judah opened it, entered the bedroom, and proceeded to look at Judah's possessions around the room. Then, standing between

Judah and the doorway and blocking Judah's path of exit, Detective Faulhaber interrogated Judah concerning a burglary of baseball cards committed at the home of Scott Griffiths. Judah made no admissions to the detective, nor did the detective find or seize any contraband or evidence. After spending about fifteen minutes in the Johns' family home, Faulhaber left.

On September 5, 1994, Juvenile Aid Officer Tina Giles went to the Johns' home and arranged with Mrs. Johns for the interrogation of Judah the next day. Officer Giles returned on September 6, 1994, and questioned Judah at his home in the presence of his mother.

## B. The Civilian Complaint

On September 15, 1994, Mrs. Johns prepared, signed and filed a civilian complaint report concerning the incident on August 23rd, in which she alleged as follows:

> On the morning of 8/23/94, Officer Faulhaber came to my residence. My daughter, age 13, came to the door. He asked for my son, Judah, age 15. My daughter said he was home, but still asleep. He then asked my daughter where his room was located in the house and she told him, and he proceeded to go in the room and did question my son without my permission and knowledge about a burglary he was working on.

Pls.' Compl. Ex. 2.

Defendant Scott, the Chief of Police and highest ranking officer in the Town of East Hampton Police Department, thereupon personally established an Internal Affairs file in connection with the complaint. Scott then spoke personally with Mrs. Johns on the telephone, and personally interviewed Faulhaber. Scott concluded the matter by issuing a written "counseling report," admonishing Faulhaber for a "lack of judgment."

Dissatisfied with what she perceived to be inadequate disciplinary action against Faulhaber, Mrs. Johns spoke with a reporter for a local newspaper, expressing her public criticism of the conduct of the Town and the Town Police Department in connection with the manner in which the incident was handled. An article embodying her remarks appeared in the newspaper shortly thereafter. In addition, in January 1995, at a televised meeting of the Town Board of the Town of East Hampton, Mrs. Johns publicly complained about Detective Faulhaber's unauthorized intrusion into her home and interrogation of her minor child about a crime.

## C. The Alleged Retaliation

Plaintiffs allege that promptly after Mrs. Johns filed the civilian complaint with the police department, defendants engaged in retaliatory conduct through their heightened police patrol of plaintiffs' home, their increased surveillance of plaintiffs' home, their investigatory conduct, and by disseminating information to the neighboring village police departments. Specifically, plaintiffs aver that "officers came to the Johns' Family home on several occasions ostensibly looking for persons in connection with investigations when a telephone call would have sufficed," and that "officers promised one or more of Judah's acquaintances that they would not be prosecuted for wrongdoing" if they informed against Judah in connection with "an alleged criminal mischief" of which Judah was suspected.

In addition, following Mrs. Johns' televised address to the Town Board, during which she made reference to another son of hers who had been "sent to prison as a result of a plea bargain," defendant Bullock, the Town Supervisor and Police Commissioner, referred to the Johns as a "troubled" family.

## DISCUSSION

### I. Treatment of Exhibits Attached to Defendants' Motion to Dismiss

As an initial matter, the defendants, in their moving papers, have attached a number of items of public record as exhibits to their motion to dismiss the Complaint. These items include a copy of an Accreditation Report issued by the New York State Division of Criminal Justice Services certifying the East Hampton Police Department (Defs.' Ex. C); the procedure manual of the Town of East Hampton Police Department (Defs.' Ex. D); the docket sheet of the Town of East Hampton Internal Affairs Unit with respect

to the complaint lodged by Mrs. Johns against Detective Faulhaber (Defs.' Ex. E); a written statement made by Detective Faulhaber concerning his interview with Judah Johns (Defs.' Ex. F); a counseling report made by defendant Scott, Chief of Police of the Town of East Hampton Police Department to Detective Faulhaber (Defs.' Ex. G); and the civil complaint in a related action entitled *Monaco v. Town of East Hampton et al.*, 95–CV–4803 (E.D.N.Y.), in which the plaintiff therein is represented by the same attorney who is representing the plaintiffs in the case at bar (Defs.' Ex. H). The defendants contend that the Court may consider these items either pursuant to Fed.R.Civ.P. 10(c), as having been incorporated by reference into the complaint,[1] or by converting the defendants' motion into an application for summary judgment pursuant to Fed.R.Civ.P. 56. The latter conversion procedure is set forth under Fed.R.Civ.P. 12(b), which states, in pertinent part:

> If, on a motion [pursuant to Fed.R.Civ.P. 12(b)(6).] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

 It is well established that when a "plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1327, at 762–63 (2d ed.1990). In *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992), the Second Circuit Court of Appeals reaffirmed that the submission of documents referred to in the complaint as exhibits in support of a Rule 12(b)(6) motion is not considered reliance on outside materials so as to require the recharacterization of a motion to dismiss as one seeking summary judgment. *See id.* at 47–48. The Second Circuit, in *Cortec*, further noted that a court may consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had "in [his] possession or had knowledge of and upon which [he] relied in bringing suit." *Id.* at 48.

 In the present case, the plaintiffs contend that in the event that the Court considers the exhibits attached to the defendants' motion to dismiss, the defendants' motion should be converted into one seeking summary judgment, which then should be denied at this juncture pursuant to Fed.R.Civ.P. 56(f) to permit further discovery. Such conversion is unnecessary, however, in view of the safeguards provided by Fed.R.Civ.P. 10(c) when considered in tandem with Fed. R.Civ.P. 12(b). In this regard, it impresses the Court that because judicial notice of the annexed court documents is proper—since they are matters of public record, and the authenticity of the copies submitted has not been disputed by the plaintiffs—the better approach is not to strike these exhibits from consideration on defendants' motion to dismiss, but rather to limit the inferences that the Court may draw from them. More specifically, the Court, in recognition of the procedural posture, will not draw any inferences adverse to the plaintiffs from these exhibits except to the extent that these items of public record *expressly* contradict the Complaint's allegations (which they do not). Thus, for example, with respect to the copy of the Accreditation Report issued by the New York State Division of Criminal Justice Services certifying the East Hampton Police Department (Defs.' Ex. C), the Court will consider this exhibit only to the extent that it may bear upon the limited proposition that the East Hampton Police Department was so certified during the period stated in the Accreditation Report; the Court will not draw any inferences from this document concern-

---

**1.** Entitled "Adoption by Reference; Exhibits," Rule 10(c) provides as follows:

> Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

Fed.R.Civ.P. 10(c).

ing the lawfulness of the practices of the East Hampton Police Department during the period in question. Similarly, the Court will not draw from these exhibits any inferences adverse to the plaintiffs regarding the thoroughness of the procedures employed by the East Hampton Police Department in its investigation of Detective Faulhaber concerning his alleged interrogation of Judah Johns. This approach would appear to strike the appropriate balance envisioned by Fed. R.Civ.P. 10(c) and 12(b).

## II. Standards Governing Rule 12(b)(6) Motion to Dismiss

A district court should grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.,* 492 U.S. at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

■ With these principles in mind, the Court now turns to consider the defendants' substantive contentions in support of their motion for partial dismissal. In performing this analysis, the Court also will address plaintiffs' cross-motion to amend their complaint.[2] *See Persaud v. Exxon Corp.,* 867 F.Supp. 128, 135 (E.D.N.Y.1994) ("In order for an application to amend a pleading [under Fed.R.Civ.P. 15(a) ] to be denied, the non-

movant must demonstrate either bad faith on the part of the moving party, the futility of the claims asserted within the application, or under prejudice to the nonmovant.") (internal citations and quotations omitted).

## III. Sufficiency of Plaintiffs' Claims under 42 U.S.C. § 1983

The defendants assert that the plaintiffs' complaint must be dismissed against each of the defendants for failure to state a claim under 42 U.S.C. § 1983, except for the Fourth Amendment claim against defendant Faulhaber arising out of his alleged entry into and search of Judah's bedroom.

42 U.S.C. § 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985)), *cert. denied,* —— U.S. ——, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). In order to state a claim cognizable under section 1983, " 'a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.' " *Eagleston v. Guido,* 41 F.3d 865, 876 (2d Cir.1994) (quoting *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)), *cert. denied,* —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995).

■ The first step in analyzing a § 1983 claim is to identify the specific federal right allegedly infringed. *See Albright v. Oliver,* 510 U.S. 266, 269, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). In the instant case, plaintiffs assert that the defendants deprived

---

**2.** Where the Court is silent as to whether leave to replead a particular claim is permitted, the parties shall assume that leave to replead *has* been

granted except to the extent that such would expressly contradict the Court's analysis herein.

them of the following constitutional rights: (1) their First Amendment right to petition for redress of grievances; (2) their Fourth Amendment right against unreasonable searches and seizures; (3) their Fifth Amendment right against the giving of coerced confessions during custodial interrogations; (4) their Fourteenth Amendment right to procedural due process; (5) their Fourteenth Amendment substantive due process right to be free from arbitrary or conscience-shocking police conduct; and (6) their Fourteenth Amendment right to equal protection of the laws.

The defendants assert numerous arguments in favor of the dismissal of specific aspects of plaintiffs' federal claims. The Court will briefly address each of these contentions in the sequence set forth in defendants' memorandum of law.

### A. Statement of Claim Against Town

■ The Court agrees with the plaintiffs' contention that the Complaint succeeds in stating a claim under 42 U.S.C. § 1983 against the Town of East Hampton on the basis of custom and policy, as a result of alleged final decisions made by municipal policymakers Police Commissioner Bullock and Police Chief Scott, in condoning police misconduct towards minors and selectively ignoring civilian complaints. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986) (A single decision by a municipal policymaker can subject a municipality to liability under 42 U.S.C. § 1983.); *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

### B. Statement of Claim Against Police Department

As noted on the record at oral argument, plaintiffs' complaint is DISMISSED as against the Town of East Hampton Police Department on the ground that said defendant is not a suable entity.

### C. Statement of Claim Against Town Supervisor and Police Commissioner Bullock

■ The Court agrees with the plaintiffs' contention that Bullock's personal involvement in a constitutional deprivation has been adequately alleged. Although Bullock's statement before the Town Board that the Johns are a "troubled" family, standing by itself, fails to give rise to a First Amendment retaliation claim, *see Batista v. Rodriguez,* 702 F.2d 393, 398 (2d Cir.1983), other allegations within the Complaint sufficiently allege his gross negligence or deliberate indifference to charges of police misconduct that had been brought to his attention by Councilman Robert Cooper in October 1993. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); Pls.' Compl. ¶ 61.

### D. Statement of Claim Against Police Chief Scott

■ The Court agrees with plaintiffs' contention that the Complaint pleads a cause of action under the Equal Protection Clause of the Fourteenth Amendment against Police Chief Scott insofar as Scott, as a policymaker, evinced deliberate indifference or gross negligence in failing to investigate fully and thoroughly allegations of police misconduct. These allegations manifest a policy of harassment towards juveniles and teenagers that was selectively applied in order to punish the plaintiffs for exercising their First Amendment rights by filing a civilian complaint against Detective Faulhaber. *See LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) (To state an equal protection claim for selective application of a facially lawful state regulation, a plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."); *see also FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992) (citations omitted); *see, e.g., LaTrieste Restaurant and Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (vil-

lage's singular application of zoning use variance and restriction to topless bar stated claim for selective enforcement) (quotations and citations omitted).

### E. Bullock's and Scott's Qualified Immunity Defenses

■ The Court agrees with defendants Bullock and Scott that they are shielded from suit for damages on the basis of their qualified immunity defenses. Although certain of the constitutional rights that these defendants allegedly violated may have been clearly established at the time of the conduct in question, the Court nevertheless finds that even upon viewing the allegations of the Complaint in the light most favorable to the plaintiffs, " 'no reasonable jury could conclude that it was objectively unreasonable for [these] defendants to believe that they were acting in a fashion that did not violate an established federally protected right.' " *Quartararo v. Catterson,* 917 F.Supp. 919, 959 (E.D.N.Y.1996) (quoting *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993)). In addition, because the various policy alternatives presented to these defendants rendered their conduct discretionary, the Court rejects the plaintiffs' contention that the qualified immunity doctrine is inapplicable on the basis that Bullock's and Scott's conduct was ministerial. *Cf. Walz v. Town of Smithtown,* 46 F.3d 162, 168–69 (2d Cir.) (Public official was not exercising a discretionary function but simply refusing to perform a ministerial act where he declined to issue an excavation permit which, under state law, he was required to issue.), *cert. denied,* ── U.S. ──, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995).

Accordingly, to the extent that the Complaint asserts claims against defendants Bullock and Scott in their *individual* capacities, the Complaint is hereby DISMISSED. Such dismissal, however, shall be without prejudice to file an amended complaint. In addition, the Court observes that to the extent that the Complaint asserts claims against these defendants in their *official* capacities (i.e., claims seeking equitable relief as opposed to money damages), these defendants remain parties to this litigation. *See Quar-*

*tararo,* 917 F.Supp. at 948 (" '[T]he personal privileges of absolute or qualified immunity are available to governmental officials only with respect to damage claims asserted against them in their individual capacities.' ") (quoting *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1146 (2d Cir.1995)).

### F. Statement of Claim for Failure to Issue Miranda Warnings

■ To the extent that the Complaint purports to assert a claim based upon Detective Faulhaber's failure to administer *Miranda* warnings to Judah Johns prior to subjecting him to custodial interrogation, defendants' motion for partial dismissal is GRANTED. This result obtains because *Miranda* warnings are merely procedural safeguards, and not constitutional rights. Therefore, a law enforcement official's failure to administer *Miranda* warnings prior to subjecting a person to custodial interrogation does not give rise to a constitutional deprivation provided that no involuntary statements made by the declarant are used against him in a criminal proceeding. *See Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995) (per curiam), *cert. denied,* ── U.S. ──, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996); *Weaver v. Brenner,* 40 F.3d 527, 534–36 (2d Cir.1994).

In the case at bar, the Complaint does not plead that Judah Johns' Fifth Amendment rights were violated through the use of a compelled statement against him at some criminal proceeding. *See Weaver,* 40 F.3d at 535 ("[U]se or derivative use of a compelled statement at any criminal proceeding against the declarant violates that person's Fifth Amendment rights. . . ."); Pls.' Compl. Count II. Further, the Complaint does not allege that Detective Faulhaber's conduct involved coercive interrogation techniques which produced an involuntary incriminating statement. *See id.* at 536. Accordingly, Count II of the Complaint is hereby DISMISSED, although such dismissal shall be with leave to replead in accordance with the Second Circuit's analysis in *Weaver.*

### G. Statement of Claim for Violation of Procedural Due Process

■ The Court agrees with the defendants that the Complaint fails to plead a

claim for a violation of procedural due process in connection with the defendants' manner of handling complaints against police officers. In this regard, the plaintiffs have failed to plead, in accordance with established Supreme Court doctrine, the existence of a property or liberty interest which may serve as a basis for the assertion of a procedural due process claim. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) ("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it."); *see Quartararo*, 917 F.Supp. at 960. "The deprivation of a procedural right to be heard ... is not actionable when there is no protected right at stake." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). The plaintiffs do not allege that state law *required* their civilian complaint against Detective Faulhaber to be reviewed in any prescribed manner so as to confer upon them "a legitimate claim of entitlement" to said manner of review. *Kentucky Dep't of Corrections*, 490 U.S. at 460, 109 S.Ct. at 1908; *see Gagliardi*, 18 F.3d at 192. Accordingly, plaintiffs' procedural due process claims are hereby DISMISSED.

### H. Statement of Claim for Violation of Substantive Due Process

■ The Court agrees with the defendants that the Complaint fails to state a claim for a violation of the substantive due process component of the Fourteenth Amendment, although for different reasons than those which the defendants assert. Specifically, it appears to the Court that the same state conduct which the Complaint regards as arbitrary and conscience shocking—and therefore allegedly violative of the plaintiffs' substantive due process rights—also may be analyzed to allege claims under, *inter alia*, the First Amendment (retaliatory conduct for the exercise of First Amendment rights), the Fourth Amendment (unreasonable search and seizure), and the Equal Protection Clause of the Fourteenth Amendment (selective treatment due to an impermissible purpose). Under *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.*, at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Thus, substantive due process analysis generally may not be employed absent a showing of government interference with a fundamental constitutional right (e.g., matters relating to marriage, family, procreation, and the right to bodily integrity). *See id.*, 510 U.S. at ——, 114 S.Ct. at 812. Accordingly, defendants' motion to dismiss plaintiffs' substantive due process claims is GRANTED.

### I. Statement of Claim for Violation of Plaintiffs' First Amendment Right to Petition for Redress of Grievances

■ The Court agrees with the plaintiffs' contention that the Complaint states a claim of retaliation for the exercise of First Amendment rights, to wit, Mrs. Johns' filing of a civilian complaint against Detective Faulhaber. *See Gagliardi*, 18 F.3d at 194 ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.").

### J. Statement of Claim for Violation of Equal Protection Clause of the Fourteenth Amendment

■ The Court agrees with the plaintiffs that the Complaint states a claim under the Equal Protection Clause of the Fourteenth Amendment. This claim is premised upon the plaintiffs' selective exposure to harassment by law enforcement officials in order to punish them for Mrs. Johns' exercise of her First Amendment rights by filing a civilian complaint against Detective Faulhaber. *See LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980) (To state a claim for selective application of a facially lawful state regulation, a plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person."), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *see also FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992) (citations omitted); *see, e.g., LaTrieste Restaurant and Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (village's singular application of zoning use variance and restriction to topless bar stated claim for selective enforcement) (quotations and citations omitted).

K. *Statement of Claim Based Upon Failure of Certain Defendants to Intercede*

▆ In Count X, the plaintiffs allege claims under 42 U.S.C. § 1983 against unspecified members of the Town of East Hampton Police Department who were aware of the constitutional violations visited upon the plaintiffs, but did nothing to prevent their occurrence and repetition. Although this count incorporates by reference the other allegations of the Complaint, it nevertheless is deficient because it fails to allege the personal involvement of these unnamed defendants in a constitutional violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Accordingly, this count is DISMISSED with leave to replead.

**IV. Plaintiffs' Pendent State Claims**

▆ Finally, Counts III, V and XI of the Complaint allege pendent claims under state law for violations of New York statutes governing the treatment of juveniles upon their arrest and detention, violations of the Town of East Hampton Police Department's own policies and procedures, and negligent infliction of emotional distress. Defendants contend that these causes of action must be dismissed because the plaintiffs have failed to comply with the statutory prerequisites for bringing these claims, as set forth in sections 50–e and 50–i of the General Municipal Law. *See* N.Y.Gen.Mun.Law §§ 50–e, 50–i (McKinney 1986). Section 50–e generally requires that a notice of claim be served upon the municipality within 90 days of the date that the claim arose. *See* N.Y.Gen.Mun.Law § 50–e(1)(a) (McKinney 1986).

▆ Plaintiffs' principal response to defendants' contention—which defendants in fact concede—is that the condition precedent imposed under the New York General Municipal Law applies solely to state tort claims, and not to federal civil-rights claims under 42 U.S.C. § 1983. Plaintiffs further contend that the claim for negligent infliction of emotional distress (Count XI) is not barred by section 50–e to the extent that it is asserted against the individual defendants in their *individual* capacities, or is premised upon other New York statutes. This assertion, however, is contrary to the weight of authority. *See Ruiz v. Herrera,* 745 F.Supp. 940, 944–46 (S.D.N.Y.1990) (notice of claim must be served on municipality as a condition precedent to filing a civil action based upon negligent conduct against an on-duty police officer).

Upon consideration of the parties' contentions, the Court agrees with the defendants' assertion that all of plaintiffs' pendent state-law claims must be DISMISSED for failure to file a notice of claim with the Town of East Hampton. *See Davidson v. Bronx Mun. Hosp.,* 64 N.Y.2d 59, 61–62, 484 N.Y.S.2d 533, 534–35, 473 N.E.2d 761, 762–63 (1984) (per curiam) (notice of claim requirement is a condition precedent to bringing suit under New York law). The plaintiffs, however, are granted leave to amend their complaint to the extent that the factual allegations underlying these pendent claims may be used in support of plaintiffs' federal claims under 42 U.S.C. § 1983.

*CONCLUSION*

For the foregoing reasons, the Court enters the following orders in this action:

1. Defendants' motion for partial dismissal of plaintiffs' complaint is granted in part and denied in part in accordance with the analysis stated herein.

2. Plaintiffs' cross-motion for leave to file an amended complaint is granted in accordance with the analysis stated herein.

SO ORDERED.