Michael E. NERNEY, Plaintiff–
Appellant,

v.

VALENTE & SONS REPAIR SHOP, a
Partnership, Joseph A. Valente and
Mary Ann Valente, d/b/a Valente & Sons
Repair Shop, Defendants–Appellees.

No. 1537, Docket 94–9026.

United States Court of Appeals,
Second Circuit.

Submitted April 12, 1995.
Decided Sept. 13, 1995.

Timothy G. Mulcahy, Greenfield Center, NY, for plaintiff-appellant.

Sanford N. Finkel, Troy, NY, for defendants-appellees.

Before: FEINBERG, WALKER, and CABRANES, Circuit Judges.

PER CURIAM:

Plaintiff Michael Nerney filed this suit against his former employer, Valente & Sons Repair Shop ("Valente Repair"), and its partners Joseph and Mary Ann Valente. Nerney claimed that defendants' failure to pay his medical premiums during his employment and to secure continued medical coverage after his employment violated defendants' duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and state law. Plaintiff appeals from an order granting summary judgment in favor of defendants and denying leave to amend the complaint entered in the United States District Court for the Northern District of New York (Hon. G. Cholakis, District Judge).

Because we believe that amendment of the complaint should have been permitted, we affirm in part, reverse in part, and remand.

## BACKGROUND

Nerney applied for a job with Valente Repair on August 22, 1991 and began working there soon after. While at Valente Repair, Nerney expressed interest in joining the medical plan offered to the company's employees, which was provided through the Rensselaer Chamber of Commerce ("RCC") by the Capital District Physicians' Health Plan ("CDPHP" or the "Plan"). After some delays, Nerney learned on October 1, 1991 that he had been added to the Plan. He received a copy of the policy and his identification cards on October 7, but returned one of his cards so that some inaccuracies could be corrected.

Nerney quit his job at Valente Repair on October 23, 1991, approximately two months after starting. No one at Valente Repair informed Nerney that he might be eligible for continued coverage under CDPHP after his departure. According to Nerney's affidavit, the accuracy of which defendants dispute, Nerney nonetheless requested that Valente Repair continue his health insurance until the plan offered by his new employer could take effect. Nerney started his new job on October 28. On November 1 he received his corrected identification cards from CDPHP and on December 2 he received a CDPHP benefits explanation packet.

On December 6, 1991, Nerney entered Albany Memorial Hospital suffering from severe abdominal pain. Although he did not inquire whether the hospital participated in the Plan before arriving, he did present his CDPHP identification cards to the receptionist, who accepted them without mentioning a problem with his coverage. After the hospital initially misdiagnosed his condition as a minor intestinal problem and released him, Nerney was readmitted on December 9 and underwent emergency surgery for a perforated colon.

On December 13, while still recovering in the hospital, Nerney received a termination notice from CDPHP. The notice stated that the effective date of termination was October 1, 1991, the same day that his coverage was to have commenced. Nerney was discharged on December 16, 1991. His treatment, including follow-up procedures, cost him in excess of $37,000, expenses that CDPHP and Valente Repair refused to cover.

Nerney commenced this action on September 3, 1992. He alleged that Valente Repair had failed to pay any premiums to CDPHP on his behalf as promised and had neglected to notify him either of this lapse or of his right to continue his coverage. The result of these failures, he contended, was to deprive him of continued coverage in violation of ERISA and state law. Both Nerney and defendants subsequently moved for summary judgment. On September 9, 1994, the district court denied Nerney's motion for summary judgment, granted summary judgment in favor of defendants, and dismissed the complaint. The district court also denied Nerney's request to amend the complaint to add a cause of action for breach of ERISA fiduciary duties. Plaintiff appeals.

## DISCUSSION

The district court's decision had three principal components. It first dismissed Nerney's ERISA claims after concluding that ERISA did not provide a remedy for defendants' conduct. Second, the district court denied Nerney leave to amend his complaint

to add a claim for violation of ERISA fiduciary duties on the ground that amendment would be futile. Finally, the district court declined to exercise supplemental jurisdiction over Nerney's state law claims. Nerney challenges each component, and we address them in turn.

## I. The ERISA Claims

■ Nerney's complaint asserted two claims under ERISA: (1) that defendants violated the terms of the Plan, and (2) that defendants were obligated under ERISA, specifically 29 U.S.C. § 1021, to provide Nerney with a summary of his rights under the Plan and to notify him that Valente Repair had failed to pay his premiums. On appeal, Nerney appears to abandon the latter claim, challenging only the district court's dismissal of his claim based upon Nerney's violation of the Plan's terms. As to that claim, the district court found that the CDPHP was a plan governed by ERISA and that defendants were subject to ERISA's strictures as administrators, but concluded that defendants were not obligated under the terms of the Plan. We agree.

Under 29 U.S.C. § 1132(a)(1)(B), a participant of a plan governed by ERISA may bring an action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." Nerney asserts that Valente Repair and its partners violated the terms of the Plan both by failing to pay premiums on his behalf and by neglecting to inform him of his continuation rights. As the district court found, the Plan did not impose these duties on the defendants.

The Plan imposes duties on the "Policyholder" both to pay premiums on behalf of members and to notify them of their rights. Section XV(A) of the Plan specifies that the Policyholder must arrange for collection of premiums from Subscribers and that "[t]he Policyholder shall pay the total monthly premium due CDPHP on behalf of those Subscribers" each month. Although the Policy does not explicitly state that the Subscriber is entitled to notice of the right to continued coverage, under Section X(B)(2) the Subscriber must make a written request for con-

tinuation within twenty days of the subscriber's termination from employment or "[t]he date the employee is given notice of the right of continuation by the group," whichever is later, but in any event within thirty-one days of termination. Pursuant to Section XVI(G)(2), "[t]he Policyholder agrees to provide appropriate notice to all affected Subscribers at its own expense." Arguably, notice of the right to continued coverage qualifies as "appropriate notice" and is thus the Policyholder's obligation.

Unfortunately for Nerney, however, Valente Repair is not the Plan's "Policyholder." The policy defines the "Policyholder" as "the employer, association, or group which contracts with [CDPHP] to provide Health Services to Members." The Standard Plan Certificate identifies RCC, not Valente Repair, as the group that has contracted with CDPHP for health coverage. Consistent with this position, a letter from CDPHP to plaintiff's attorney on January 9, 1992 stated that it had sent Nerney enrollment information "based on our contractual agreement with [RCC]." Nothing in the express terms of the Plan obligates an employer that is not also the Policyholder to provide notice to a subscriber, pay an employee's premiums, or fulfill any other duties. Thus, while Nerney may have a cause of action against RCC based upon violation of the Plan's terms, the district court correctly dismissed the claim against Valente Repair and its partners.

## II. Leave to Amend

■ Nerney also sought leave to amend the complaint to add a claim for violation of fiduciary duties under ERISA. Because a responsive pleading has already been served, leave to amend at this point must be obtained from the district court. Fed.R.Civ.P. 15(a). However, Rule 15(a) specifies that "leave shall be freely given when justice so requires," and the Supreme Court has emphasized that amendment should normally be permitted, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *John Hancock Mut. Life Ins. Co. v.*

*Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994).

The district court found that amendment would not "threaten to cause great hardship" but found the claim "so lacking in merit that leave should not be granted." It agreed with Nerney that, as an administrator, Valente Repair was an ERISA fiduciary and that the failure to pay premiums on Nerney's behalf or to inform him of his continuation rights may have breached defendants' fiduciary duties. *Cf. Eddy v. Colonial Life Ins. Co. of Am.,* 919 F.2d 747, 750 (D.C.Cir.1990) ("A fiduciary has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship."). It denied leave to amend solely on the ground that, since Nerney was not eligible for continuation of his benefits, any breach of defendants' fiduciary duties "would not be relevant to his injury." We believe that there is a genuine issue of material fact as to the premise underlying this last conclusion and that as a result amendment to add a claim for violation of ERISA fiduciary duties should be allowed.

Continuation of coverage is governed by Section X of the policy. Under Section X(B)(1),

> If the Subscriber's Coverage under the Contract ends due to termination of employment or membership in the group, he may continue Coverage.... Continuation of Coverage will not be available for: ... b. Any person who is; becomes; or could be covered as an employee; Member; or dependent by an alternative health benefits plan which provides group health coverage.

The district court, in concluding that this exclusion applied to plaintiff, stated only that "Section X excludes coverage for individuals who have other group insurance available to them. Under these limitations, Mr. Nerney had no right of coverage to exercise." Presumably, the district court based this conclusion on the fact that Nerney had already enrolled in a plan offered by his new employer when he incurred the medical expenses at issue.

Nerney disputes this factual finding. He asserts both in his appellate brief and in his affidavits to the district court that while he had enrolled in a new plan at the time of his hospitalization, coverage under the plan did not begin until some time in January 1992, almost a month after his operation. Because the exclusion to continuation of coverage applies only if the subscriber is covered by, not merely enrolled in, a new employer's insurance plan, Nerney would not have been ineligible for coverage if this assertion were true.

Defendants offer no evidence to dispute the accuracy of Nerney's allegation. Rather, they charge that he has not offered sufficient proof of a coverage gap and doubt that such a gap existed. At a minimum, these contradictory allegations present a genuine issue of material fact. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352–53 (2d Cir. 1994); *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir. 1993). Because it would be possible for Nerney to prevail on an ERISA fiduciary claim at trial, the district court erred in concluding that amendment would be futile, and denial of leave to amend was therefore an abuse of discretion. *See Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991) (finding it an abuse of discretion to deny leave to amend where amendment could cure a defect in the complaint and thus would not be futile); *cf. S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co.,* 608 F.2d 28, 42 (2d Cir.1979) (reversing denial of leave to amend where "the alleged futility of the amendment rests on findings of fact").

Nerney asks us to go further and award him summary judgment on this added claim. We decline to do so. Nerney's bald assertion that he was not covered by new insurance at the time of his hospitalization, unsupported by any documentary evidence, is insufficient to resolve the genuine issue of material fact in his favor. There also appears to be a genuine issue of material fact as to whether Nerney requested continued coverage from the defendants, a dispute that may determine the nature of defendants' fiduciary duties. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d

1292, 1300–03 (3d Cir.1993) (finding no breach of fiduciary duty where plan beneficiary did not apprise administrator of her circumstances but reversing a grant of summary judgment for defendants where beneficiary made a specific inquiry about benefits); *see also Fortune v. Medical Assocs. of Woodhull, P.C.,* 803 F.Supp. 636, 640–41 (E.D.N.Y. 1992) (reversing summary judgment for defendant on a fiduciary duty claim because the beneficiary specifically inquired about the conditions of a policy).

Moreover, because the district court did not permit Nerney to amend his complaint to add a claim for breach of fiduciary duties, the parties did not have the opportunity to litigate the claim fully either before the district court or this court, and the district court did not have occasion to address all of the issues implicated by the claim. For example, the district court did not examine whether, in light of the policy's requirement that a subscriber request continuation of coverage in writing within thirty-one days of termination and the fact that Nerney possessed a copy of the policy, defendants' breach was the proximate cause of Nerney's injuries.[1] We therefore remand to permit the district court to address the claim in the first instance.

### III. State Law Claims

After dismissing plaintiff's ERISA claims, the district court declined to exercise its supplemental jurisdiction over the remaining state law claims. A district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because amendment of the complaint to add a claim for breach of ERISA fiduciary duties "restores pendent jurisdiction ... we remand [those claims] as well." *Albert v. Carovano,* 851 F.2d 561, 574 (2d Cir.1988) (in banc). The district court may either exercise jurisdiction over those claims under § 1367(a) or articulate "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

### CONCLUSION

For the reasons stated above, we affirm the dismissal of plaintiff's ERISA claims, reverse the district court's decision to deny leave to amend, and remand for consideration of the claim for violation of ERISA fiduciary duties and Nerney's claims under state law.

---

1. Because a fiduciary may in some circumstances be liable for a beneficiary's failure to comply with the terms of a policy, *see, e.g., a Eddy,* 919 F.2d at 751 (noting that plaintiff "should not be penalized because he failed to comprehend the technical difference between 'conversion' and 'continuation'"); *Fortune,* 803 F.Supp. at 641 (finding that insurer may be liable where it breached its fiduciary duty to provide beneficiary with "complete and correct material information"), we do not mean to imply that Nerney's claim fails on proximate cause grounds.