**Geraldine R. IPPOLITO, Plaintiff,**

v.

**William J. MEISEL, Garry A. Sutcliffe, Shawn J. Barry, Thomas McCoskery, Robert W. Kelso, Brian Kevin Quinn and Edward S. Stockhoffer, Defendants.**

**No. 96 Civil 990(WCC).**

United States District Court,
S.D. New York.

March 10, 1997.

---

Geraldine R. Ippolito, New Windsor, NY, pro se.

Drake, Sommers, Loeb, Tarshis & Catania, P.C., Newburgh, NY, for William J. Meisel, Garry A. Sutcliffe, Shawn J. Barry and Thomas McCoskery; Richard F. Liberth, of counsel.

Rosenstein & Helhoski, P.C., Middletown, NY, for Robert W. Kelso, Brian Kevin Quinn and Edward S. Stockhoffer; Monte J. Rosenstein, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The above-captioned case is before this court on defendants' motion for summary judgment, and on plaintiff's cross-motion for summary judgment.[1] For reasons discussed below, defendants' motion is granted.

## BACKGROUND

The following facts are not seriously in dispute. Plaintiff, *pro se,* was stopped for speeding and operating an unregistered motor vehicle in the Village of Walden, New York on August 5, 1995 by defendant Gary Sutcliffe, a police officer employed by the Village. Plaintiff asserts that Sutcliffe "falsely arrested" her "in violation of his oath of office" and "without probable cause or warrant for arrest" by "criminally trespassing on private property" owned by plaintiff's daughter. Pl. Br. at 1.

Plaintiff received a summons to appear in court to answer to the charges, but failed to appear. Plaintiff claims that she "made appearances ... via U.S. Mail on August 9, 1995 and August 21, 1995." *Id.* On September 29, 1995, plaintiff attempted to file a "Refusal for Cause" in the Village of Walden Justice Court. Village Justice William Meisel denied plaintiff's submission. That same day, plaintiff sent by certified mail the same "Refusal for Cause" to the Village of Walden Justice Court. Thereafter, Justice Meisel issued a warrant for plaintiff's arrest for failing to appear to answer the charges of speeding and operating an unregistered motor vehicle. Plaintiff challenges the validity of the warrant for her arrest on the grounds

---

1. Plaintiff, *pro se,* rather than filing a response to defendants' motion for summary judgment, filed her own "Motion for Summary Judgment." For the purpose of this opinion, we treat her submission as both a response to defendants' motion for summary judgment and a cross-motion for summary judgment.

that (1) the warrant was issued without probable cause, (2) the warrant was issued for an "infraction," and not a for "crime," (3) the warrant lacked a description of the plaintiff and failed to name a location, and (4) the warrant was an "incomplete instrument."

On October 18, 1995 Village police officers attempted to serve the warrant and take the plaintiff into custody at the home of plaintiff's daughter in the Town of Montgomery.[2] Plaintiff refused to open the door to the home and refused to be taken into custody.

On October 19, 1995, defendant Shawn Barry, a Village police officer, swore out a misdemeanor complaint in the Town charging plaintiff with resisting arrest. Town Justice Robert Kelso reviewed the Misdemeanor Complaint and the prior Warrant of Arrest issued by Justice Meisel, and issued a second Warrant of Arrest in the Town charging plaintiff with resisting arrest. Officers Brian Quinn, Edward Stockhoffer, Shawn Barry and Thomas McCoskery effected the arrest pursuant to the warrant, and plaintiff was arraigned the same day before Village Justice Meisel on the first warrant and Town Justice Kelso on the second warrant. She ultimately was released on bail in the first instance and on her own recognizance in the second. On December 6, 1995, Justice Meisel conducted a traffic trial at which plaintiff was convicted of speeding and operating an unregistered motor vehicle. A fine was assessed which remains unpaid to date. Plaintiff has not yet appeared with regard to the charge of resisting arrest in the Town of Montgomery.

On February 8, 1996, plaintiff filed in this court a "Complaint for Civil Rights Damages and Violations of Oaths of Office" against Sutcliffe (the Village of Walden Officer issuing the original tickets), Justice Meisel (the Walden Village Justice who issued the arrest warrant for plaintiff's failure to appear to answer the traffic charges), Officer Barry, (the Officer who attempted to effect Meisel's warrant and swore out a complaint for resisting arrest), Justice Kelso (the Montgomery Town Justice who issued a warrant for resisting arrest) and Officers Quinn, Stockhoffer, and McCoskery (the Officers who executed Kelso's warrant). Although it is difficult to discern the precise claims plaintiff seeks to bring, she recites that 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), § 1985 ("Conspiracy to interfere with civil rights") and § 1986 ("Action for neglect to prevent" (a violation of § 1985)) were violated by, *inter alia*, the warrants, her arrest and Judge Meisel's refusal to accept her "Refusal for Cause." She asserts that various of her constitutional rights, guaranteed by the 1st, 4th, 5th, 6th, 7th, 8th, 10th and 14th Amendments were violated. Defendants brought a motion for summary judgment under FED.R.CIV.P. 56 arguing that they are entitled to either absolute or qualified immunity from liability. We analyze the various claims against the individual defendants below.

## DISCUSSION

### I. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific

---

**2.** The Village of Walden is within the Town of Montgomery.

facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but must set forth specific facts "showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## II. OFFICIAL CAPACITY CLAIMS

### A. Damages claims

We note at the outset that it is unclear from the complaint whether plaintiff intends to sue defendants in their individual or official capacities. It appears likely that her complaint only states a claim against defendants in their individual capacities since she has asked for punitive damages, Compl. ¶ 50(2), and the defendants have responded by raising absolute and qualified immunity defenses. *See Rodriguez v. Phillips,* 66 F.3d 470, 482 (2d Cir.1995) (Where complaint seeks punitive damages unavailable against a state, and defendants defend on qualified immunity grounds, a defense unavailable in official capacity suits, this suggests parties viewed the suit to be in individual capacities only). However, guided by the Second Circuit's opinion in *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993), we will treat plaintiff's *pro se* complaint as attempting to bring claims against all defendants in both capacities.

To the extent that a state official is sued in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke Eleventh Amendment immunity. *Id.* at 529. To the extent he is sued for damages in his individual capacity, he is not entitled to invoke the Eleventh Amendment, but where applicable, may rely upon the doctrines of absolute or qualified immunity. *Id.* Although we treat plaintiff's complaint as attempting to sue defendants in their official capacities as well as individually, it is not necessary to allow plaintiff to amend her complaint to specifically include these claims because such claims would be barred as a matter of law.[3]

The Eleventh Amendment bars suits against the state for money damages to be paid from the state's treasury, even if an individual officer is named as defendant. *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Thus, any damage claims against Justices Meisel and Kelso would be barred by the Eleventh Amendment, since they are state officials. *See Sassower v. Mangano,* 927 F.Supp. 113, 120 (S.D.N.Y.1996) (suit against presiding and associate Justices of the Supreme Court of New York, Second Department barred); *Jaffer v. Chemical Bank,* 1994 WL 392260 *2 (S.D.N.Y.) (suit against Judge of the Civil Court of the City of New York for money damages in official capacity is essentially a suit against the state); *Birnbaum v. Rodriguez,* No. 94–5180, 1995 WL 745040 at *2 (E.D.N.Y. Dec. 4, 1995) (claims against Judge of Housing Court of City of New York barred); *Baker v. Hardy,* Nos. 89–003 and 89–013, 1989 WL 32097 at *2 (N.D.N.Y. April 3, 1989) (claims against state administrative law judge barred).[4]

Any damage claims against the police officers in their official capacities would also be barred, not by the Eleventh Amendment, *see Draper v. Coombs,* 792 F.2d 915, 919, n. 5 (since the Eleventh Amendment does not protect local government bodies or local officials, city police officers are not afforded Eleventh amendment immunity), but by the requirement that a municipal policy or

---

**3.** Because a responsive pleading has already been served, leave to amend must be obtained from the District Court. FED.R.CIV.P. 15(a). Rule 15(a) specifies that "leave shall be freely given when justice so requires and the Supreme Court has emphasized that amendment should normally be permitted". *Nerney v. Valente & Sons Repair Shop,* 66 F.3d 25, 29 (2d Cir.1995) (emphasis added). However, "[u]ndue delay and futility of the amendment, among other factors, are reasons to deny leave." *Id.* (citations omitted).

**4.** In addition, neither a state nor state officials sued in their official capacity are "persons" for the purposes of § 1983. *Yorktown Medical Lab. v. Perales,* 948 F.2d 84, n. 1 (2d Cir.1991).

custom must be proven in order for a municipality to be liable under § 1983 for the actions of its officers. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Because plaintiff has made no allegations, and we see no basis for concluding, that the officers' allegedly unconstitutional actions constituted a policy or practice of their respective municipalities, plaintiff has not, and apparently cannot state a claim for damages against the individual officers in their official capacities.

### B. *Request for Declaratory Judgment*

■ Plaintiff requests that two types of declaratory judgment be entered against defendants. Although the Eleventh Amendment bars damage claims against state officials acting in their official capacity, federal courts can enjoin state officers acting in their official capacity, as long as the injunction only governs the officer's future conduct and a retroactive remedy is not provided. *Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir.), *cert. denied*, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990). This reasoning has apparently been extended to declaratory judgments. *See Pulliam v. Allen*, 466 U.S. 522, 544, 104 S.Ct. 1970, 1982, 80 L.Ed.2d 565 (1984) (dissenting opinion). However, the Supreme Court has held that "the Eleventh Amendment bars a retrospective declaration of a violation of federal law where there is no continuing violation to enjoin." *Marbley v. Bane*, 57 F.3d 224, 232 (2d Cir.1995) (injunction), *(citing Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985) (declaratory judgment)).

■ Plaintiff first requests a declaratory judgment that defendants "violated clearly established law." Compl. ¶ 50(4). This is clearly nothing more than a request for a "declaration of a violation of federal law where there is no continuing violation to enjoin," and is thus barred against defendants Meisel and Kelso in their official capacities, since they are state officers. *See Marbley*, 57 F.3d at 232. Additionally, plaintiff's request for a declaratory judgment fails to state a claim against the individual officer

defendants in their official capacities because it does not satisfy the *Monell* requirement of alleging that the officers acted pursuant to an official pattern or practice of their municipalities.

■ Plaintiff also requests a declaratory judgment that defendants' actions amounted to a criminal conspiracy to violate her rights under 18 U.S.C. §§ 241 and 242. This request is barred against all defendants in their official capacities for the same reasons as the first request; against Meisel and Kelso it is merely a request for a retrospective declaration of a violation and is barred by the Eleventh Amendment; against the officers it fails to allege the requisite official policy or practice of their municipalities. There is an additional problem with this request, however. Since §§ 241 and 242 are criminal statutes, there is no private right of action for violation of them. *See Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y.), *aff'd* 963 F.2d 1522 (2d Cir.1992). Thus, plaintiff has no standing to bring a claim under these sections.

Therefore, because we find that plaintiff apparently has not intended to, and on these facts legally could not, state claims for damages or for declaratory judgment against defendants in their official capacities, we next consider her claims against defendants in their individual capacities.

### III. *INDIVIDUAL CAPACITY CLAIMS*

#### A. *Section 1983 Claims*

#### 1. Claims Against Officer Sutcliffe

As best we can parse plaintiff's complaint, she appears to allege that Officer Sutcliffe's entering her daughter's property and there requesting that she return to her car and produce her license and registration, and then issuing her the two traffic tickets amounted to a trespass, Stmt. of Facts ¶ 1, as well as an arrest without probable cause.[5] Officer Sutcliffe asserts that he is entitled to qualified immunity from liability.

---

**5.** Such a claim for false arrest arises under § 1983 as a violation of the Fourth Amendment;

the trespass claim would be a pendent state claim.

A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so, created by the possessor's consent or otherwise." WM. PROSSER, LAW OF TORTS § 58 at 357 (1980). Plaintiff's trespass allegation fails to state a claim for two reasons. First, plaintiff, who was arrested on what was apparently her daughter's private property, Compl. ¶ 14, does not have the requisite ownership interest to support an action for trespass. Second, even if she had such an interest, Officer Sutcliffe's entry onto the property, for the purpose of fulfilling his public duty (issuing traffic citations to a motorist he personally saw violate a traffic law) [6], is privileged. *See People v. Czerminski*, 94 A.D.2d 957, 464 N.Y.S.2d 83, 83 (4th Dept.1983).

As for the false arrest charge, "an arresting officer is entitled to qualified immunity to a claim of unlawful arrest if 'either (a) it was objectively reasonable for the officer to believe probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Wachtler v. County of Herkimer*, 35 F.3d 77, 80 (2d Cir.1994) (citations omitted). Here, Officer Sutcliffe did not take plaintiff into custody at all, but simply flashed his lights until she pulled into her daughter's driveway and ordered her to produce her license and registration. Even if this brief intrusion on her liberty could be considered a seizure (and we do not believe it can), Officer Sutcliffe's request was objectively reasonable under *Simmons, supra,* and N.Y. VEH. AND TRAF. L. § 401[4] (McKinney 1996) (When asked for registration, the "operator shall furnish to . . . police officer any information necessary for the identification of such vehicle and its owner."). Had plaintiff ignored the request, Officer Sutcliffe would have had probable cause to arrest her for driving without a license. *Wachtler*, 35 F.3d at 80. Thus he is entitled to qualified immunity against plaintiff's damage claims based on his arrest of her.

Qualified immunity does not extend to requests for declaratory judgment, however. *Pulliam*, 466 U.S. at 544, 104 S.Ct. at 1982; *New York State Assoc. of Realtors v. Shaffer*, 833 F.Supp. 165, 187 (E.D.N.Y.), (citing *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects against suits for damages)), *rev'd on other gnds*, 27 F.3d 834 (1994). Since plaintiff asked for a declaration that Sutcliffe violated "clearly established laws," however, and this is the same standard used to determine whether an officer is entitled to qualified immunity, *see Wachtler*, 35 F.3d at 80, and we have found that Officer Sutcliffe is entitled to such immunity, it follows that he cannot have violated "clearly established laws." As for plaintiff's second request for a declaratory judgment, as discussed above she does not have standing to seek relief under §§ 241 and 242. Thus, plaintiff is not entitled to a declaratory judgment against Officer Sutcliffe.

We therefore grant Officer Sutcliffe's motion for summary judgment on all claims against him.

## 2. Claims against Justices Meisel and Kelso

Plaintiff alleges that Justice Meisel "refused [her] right to petition court, refused to recognize and in total disregard [sic] papers submitted to court by [her] issued Warrant for arrest for non-crimes," (Stmt. of Facts ¶ 2). She apparently believes this action denied her her First Amendment right to petition the government. See Compl. ¶ 45. She also alleges Justice Meisel "denied [her] right to trial by jury, never established jurisdiction and conducted a proceeding which lacked representation for the People of the State of New York," (*Id.* at ¶ 8), and "set bail without Representation for the People of the State of New York and issued plea on behalf of Party injured by practicing law from the bench," (*Id.* at ¶ 10), and refused her the opportunity to make a phone call. Her com-

---

**6.** There is no question that stopping a suspected violator of the traffic laws to request identification is within a police officer's public duty. *See People v. Simmons*, 58 A.D.2d 524, 395 N.Y.S.2d 188, 189 (1st Dep't 1977) ("A single automobile traveling on a public highway may be stopped for a 'routine traffic check' when a police officer reasonably suspects a violation of the Vehicle and Traffic Law.").

plaint alleges that at no time was she read her rights or allowed a call to obtain counsel. Compl. ¶ 38.[7]

In addition, plaintiff alleges Justice Kelso issued a "warrant for Arrest based upon perjurious information and not in compliance with the 4th amendment." Stmt. of Facts ¶ 6. In addition, she alleges that Kelso, who was "seated at the opposite end of the same table" from Justice Meisel, also arraigned her without reading her her rights or allowing her a phone call and held court out of his jurisdiction. Compl. ¶ 35–38; Stmt. of Facts ¶ 9. Plaintiff also alleges that "for violating their oaths of office to uphold the laws of the Constitution ... by denying access through threats, coercion and intimidation ... Party Injured Ippolito was injured through equal protection of the laws...." Compl. ¶ 46.

Judges are entitled to absolute immunity in the exercise of their judicial function. *Tulloch v. Coughlin,* 50 F.3d 114, 116 (2d Cir.1995). Immunity is overcome in only two circumstances: (1) where the actions were not taken in their judicial capacity and (2) where the actions, though judicial in nature, were taken in complete absence of all jurisdiction. *Mireles v. Waco,* 502 U.S. 9, 12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). The *Mireles* Court went on to note that the proper analysis is of the "nature of the act" and not of the impropriety of the act, because "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'non-judicial' act ... If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or in excess of his authority." *Id.* at 12–13, 112 S.Ct. at 288.

An examination of plaintiff's complaint and moving papers reveals that neither of these exceptions to judicial immunity is present in this case. Other than conclusory allegations that the Justices were violating their oaths of office and acting without jurisdiction, plaintiff has offered no evidence that Justices Kelso and Meisel were acting in anything other than a judicial capacity or without jurisdiction, when they issued warrants for her arrest, arraigned her, and in Justice Meisel's case, conducted a traffic trial on her two traffic charges.

There is no dispute that the speeding tickets were issued in the Village of Walden, the geographical area over which Justice Meisel presides. Plaintiff lives, and allegedly resisted arrest, within the Town of Montgomery, the geographical area over which Justice Kelso presides. By statute, town courts, like the ones over which Justices Meisel and Kelso preside, are part of the criminal court system of New York state. N.Y.CRIM. PROC. L. § 10.10 (McKinney 1996). A town court has "preliminary jurisdiction of all offenses subject to divestiture thereof in any particular case by the superior courts and their grand juries." *Id.* at § 10.30(2). Such courts also have exclusive trial jurisdiction over petty offenses, with exceptions not relevant here, and trial jurisdiction over misdemeanors which is concurrent with that of superior courts. *Id.* at § 10.30(1).

Based upon Officer Sutcliffe's supporting deposition and simplified traffic information, Justice Meisel, as Town Justice of the Village of Walden, was within his jurisdiction to issue a warrant for plaintiff's arrest when she failed to appear to answer the tickets. New York Criminal Procedure laws provide:

> when a criminal action has been commenced in a local criminal court by the filing therewith of an accusatory instrument, *other than a simplified traffic information,* against a defendant who has not been arraigned upon such accusatory instrument and has not come under the control of the court with respect thereto, such court may, if such accusatory instrument is sufficient on its face, issue a warrant for such defendant's arrest.

N.Y.CRIM. PRO. L. § 120.20 (McKinney 1996) (emphasis added). Although the traffic information alone would have been insufficient, Officer Sutcliffe's supporting "deposition" meets the requirements of § 100.15 and § 100.40 for "accusatory instruments"; in particular, it satisfies the requirements for

---

7. The record contradicts plaintiff's allegation that Justice Meisel denied plaintiff her right to make a phone call to obtain counsel. *See* fn.9, *infra.*

an information.[8]  Similarly, Justice Kelso, as Town Justice of the Town of Montgomery, was perfectly justified, based upon Officer Barry's misdemeanor complaint and supporting affidavit, in issuing a warrant for plaintiff's arrest on the offense of resisting arrest. *See* § 120.20, *supra.*  Likewise, both justices were within their jurisdiction to arraign plaintiff. *See Id.* at §§ 10.10, 170.10(1).  Finally, Justice Meisel was within his jurisdiction to hold a traffic trial on plaintiff's traffic tickets. *See discussion of* §§ 10.10, 10.30, *supra.*

▇▇  Thus, since both Justices were acting in their judicial capacity and within their jurisdiction, we grant their motions for summary judgment to the extent plaintiff's complaint seeks monetary damages against them.[9]  This decision does not end our inquiry, however, since plaintiff has requested a declaratory judgment that defendants have violated "clearly established rights,"[10] and absolute immunity does not protect judges from actions for declaratory judgment. *See Pulliam,* 466 U.S. at 544, 104 S.Ct. at 1982 (dissenting opinion).

The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).  The Supreme Court has recently emphasized the Declaratory Judgment "statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment from other areas of law in which concepts of

---

8.  N.Y. CRIM. PROC. L. §§ 100.40(1) and 100.15 prescribe the requisites necessary for an information to be "valid on its face."

Section 100.40(1) provides in relevant part that an information is "sufficient on its face" when it "substantially conforms to the requirements prescribed in section 100.15" and the factual information provides "reasonable cause to believe that the defendant committed the offense charged" and "nonhearsay allegations of the factual part of the informations establish, if true, every element of the offense charged and the defendant's commission thereof." N.Y.CRIM. PROC. L. § 100.40(1) (McKinney 1996).

Section 100.15 provides, in relevant part, that:
1.  An information ... must specify the name of the court with which it is filed and the title of the action, and must be subscribed and verified by a person known as the "complainant."  The complainant may be any person having knowledge, whether personal or upon information and belief, of the commission of the offense or offenses charged.  Each instrument must contain an accusatory part and a fact part.  The complainant's verification of the instrument is deemed to apply only to the factual part thereof and not to the accusatory part.
2.  The accusatory part must designate the offense or offenses charged....
3.  The factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges....
*Id.* at § 100.15.
Officer Sutcliffe's "supporting deposition," though perhaps unfortunately titled, satisfies these requirements.

9.  Even if the Justices were somehow not entitled to rely upon their immunity, we note that as for plaintiff's other allegations of impropriety, the transcripts show that plaintiff was repeatedly told of her right to counsel, that she was offered an opportunity to make a call, and suggest that she was in no way "intimidated or threatened." See Trans. of 10/19 arraignment and Trans. of 12/6 trial by Meisel.  Relevant portions of plaintiff's 10/19 arraignment include:

> JUSTICE MEISEL: "I am going to suggest that it might be in your best interest to consult an attorney" * * * "Do you wish an attorney?"
> IPPOLITO: "No" * * *
> JUSTICE MEISEL: "Call anybody you want, just give me the number because I've got to pay for the call."

Trans. of 10/19 arraignment; *see also* Meisel Aff. ¶ 7. While we do not have a transcript of Justice Kelso's 10/19 arraignment, plaintiff alleges that they occurred consecutively, with both the Justices seated at opposite ends of the same table. Compl. ¶ 34–38.  Justice Kelso avers that he did advise plaintiff of her rights, including her right to counsel, and that plaintiff indicated she did not want an attorney and that she did not wish to make any phone calls.  Kelso Aff. 6/12/96. Plaintiff has offered nothing but conclusory allegations that these alleged violations occurred to counter these tapes and affidavits, and such mere allegations cannot defeat a motion for summary judgment.

10.  As noted above, plaintiff's second request for a declaratory judgment, relying upon 18 U.S.C. §§ 241 and 242, is barred because she does not have standing to bring a criminal action, and there is no civil redress for such crimes.

discretion surface." *Wilton v. Seven Falls,* 515 U.S. 277, ——, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). ("[W]e have repeatedly characterized the Act as 'an enabling act which confers a discretion on the courts rather than an absolute right upon the litigant.' "). When determining whether there is an "actual" controversy, the Court has noted that the questions is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests of *sufficient immediacy and reality* to warrant the issue of a declaratory judgment." *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 17 (1993) (emphasis added by the Second Circuit), (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

While the Second Circuit has stated that "a court must entertain a declaratory judgment action if it would be useful in clarifying and settling legal relations in the case, or if it would terminate the uncertainty, insecurity, and controversy that brought about the proceeding," *Albradco, Inc. v. Bevona,* 982 F.2d 82, 87 (2d Cir.1992), a recent Eastern District case dismissed a declaratory judgment action brought by a former law clerk against a judge after holding the Judge was entitled to immunity from damages. *Sheppard v. Beerman,* 911 F.Supp. 606, 618 (E.D.N.Y. 1995) (plaintiff was inappropriately asking court to declare facts and issue was not ripe), *vacated,* 94 F.3d 823 (2d Cir.1996). Although the Second Circuit vacated the decision, it explained:

> The court dismissed Sheppard's claim for declaratory relief because, having found that Beerman was immune from damages, there was no case or controversy remaining upon which Sheppard could base a request for declaratory relief. Because we vacate the district court's dismissal of Sheppard's claim for monetary damages, the foundation for dismissing the declaratory relief claim erodes. We therefore reinstate Sheppard's claim for declaratory

relief, subject to the discussion above concerning his claim for monetary damages. *Id.* at 829 (citations omitted).

The clear implication of the *Sheppard* opinion is that the courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs. We do not believe that the instant cause presents a live controversy justifying the exercise of our discretionary authority to grant plaintiff a declaratory judgment.

3. Claims against Officers Quinn, McCoskery, Barry and Stockhoffer

Plaintiff alleges that Officers McCoskery, Barry, Quinn and Stockhoffer arrested her based upon an improper warrant, since it did not have an oath or affirmation from a complaining witness attached to it. She further alleges that they then questioned her without informing her of *Miranda* rights and without the assistance of counsel. Compl. ¶ 33. According to her, the officers took her to be arraigned before Justice Kelso, where she was not read her rights nor given an opportunity to make a phone call.[11] Plaintiff alleges that her "incarceration" for five hours amounted to a loss of liberty in violation of the 4th and 14th amendments.

Defendant officers are entitled to rely upon a warrant valid on its face. It is well settled in New York that even an unlawful detention is deemed privileged where the arrest was made pursuant to valid process issued by a court having jurisdiction. *Broughton v. State of New York,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 314–15, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); *Davis v. Syracuse,* 66 N.Y.2d 840, 498 N.Y.S.2d 355, 356, 489 N.E.2d 242, 243 (1985). Plaintiff's contention that the warrants issued for her arrest were deficient is incorrect. Under New York law:

> A warrant of arrest must be subscribed by the issuing judge, and must state or contain (a) the name of the issuing court, and

---

**11.** As discussed in fn.9, *supra,* these allegations are unsupported by any offering of evidence by plaintiff and, at least as far as the proceedings

before the Justices are concerned, are directly contradicted by the hearing and trial transcripts as well as the affidavits of the Justices.

(b) the date of the issuance of the warrant, and (c) the name or title of and offense charged in the underlying accusatory instrument, and (d) the name of the defendant to be arrested or, if such be unknown, any name or description by which he can be identified with reasonable certainty, and (e) the police officer or officers or peace officers appointed by the state university to whom the warrant is addressed and (f) a direction that such officer arrest the defendant and bring him before the issuing court.

N.Y. CRIM. PROC. L. § 120.10 (McKinney 1996). Both warrants issued against plaintiff contained all these elements. *See* warrants, Meisel Aff. Exh. A and attached to Kelso Aff. The fact that the accusatory instruments may not have been attached does not render the warrants invalid. *See* N.Y.CRIM. PROC. L. § 120.40 ("a town court, village court, or city court which issues a warrant of arrest *may* attach thereto a duplicate copy of the underlying accusatory instrument.") (emphasis added). Plaintiff claims that *U.S. v. Leary*, 846 F.2d 592 (10th Cir.1988) requires that the accusatory instrument must be attached to the warrant. This, case, however, contains no such holding. *See Id.* at 603 (if affidavit is attached to warrant, it may cure lack of particularity).

In addition, the officers are entitled to rely upon qualified immunity from monetary damages under § 1983 as long as "no reasonable jury ... could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Wachtler*, 35 F.3d at 80 (*citing Robison v. Via*, 821 F.2d 913 (2d Cir. 1987)). No reasonable jury could conclude that it was objectively unreasonable for these officers to rely upon these two facially valid warrants.

In addition, although plaintiff has alleged that these officers violated her constitutional rights by failing to read her *Miranda* rights to her, this allegation does not support a claim for constitutional violations. *Johns v. Town of East Hampton*, 942 F.Supp. 99, 107 (E.D.N.Y.1996) (Because *Miranda* warnings are merely procedural safeguards, and not constitutional rights, a law enforcement official's failure to administer *Miranda* warnings prior to subjecting person to custodial interrogation does not give rise to any constitutional deprivation provided that no involuntary statements made by declarant are used against him in a criminal proceeding), (*citing Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996)). In the present case, no statement made by plaintiff was offered in evidence at her trial or otherwise used against her.

Accordingly, we grant the motion of Officers Quinn, McCoskery, Barry, and Stockhoffer for summary judgment on the damages claims against them, and, for the same reasons discussed in part A(1), *supra*, we dismiss plaintiff's claims for declaratory judgment against Officers Quinn McCoskery, Barry, and Stockhoffer.

**B.** *Section 1985 Conspiracy and Section 1986 Action for Neglect to Prevent*

Although plaintiff recites that her action is brought under 42 U.S.C. § 1985, she does not specify upon which subdivision of § 1985 she is relying. The only possible basis for plaintiff's claims is subdivision three, which in essence proscribes conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws. *See* 42 U.S.C. § 1985. It is difficult to determine the precise nature of plaintiff's § 1985 claim. In her complaint, she alleges only that "all Respondents herein through Perjury of Oat [sic] of Office, under 18 U.S.C. § 1621 ... and by acting in concert to deprive Party Injured of certain rights, privileges and immunities granted by the Constitution ... to wit: 'Every person who under color of any statute ... subjects ... any citizen ... to the deprivation of any rights, privileges or immunities secured by the U.S. Constitution and Laws shall be liable....'" Compl. ¶ 47.

According to the Second Circuit, there are four elements to a § 1985(3) claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection

of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin and Jenrette Securities, Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (citations omitted). Moreover, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 1088. Since plaintiff has made no allegations of either racial or class-based animus, her § 1985 claim fails as a matter of law.

Furthermore, since a § 1986 claim must be based upon a valid § 1985 claim, *Id.,* her § 1986 claim also fails as a matter of law.

## IV. *MISCELLANEOUS CLAIMS*

Plaintiff alleges that all defendants committed "perjury of Oat [sic] of Office, under 18 U.S.C. § 1621." As redress on this claim, she seeks $3,000,000 in damages, and further requests that this court order a criminal investigation to include possible violations of § 1621. Compl. ¶ 50. Once again, plaintiff has attempted to rely upon a criminal statute that does not provide for civil remedies, and thus cannot support a prayer for damages. *Weiland v. Byrne,* 392 F.Supp. 21, 22 (N.D.Ill.1975). Moreover, we decline to suggest that a criminal investigation be instigated.

Lastly, we note that since plaintiff has not prevailed on any of her claims, she is not entitled to attorney's fees under § 1988. *See* 42 U.S.C. § 1988(b).

## CONCLUSION

For the above reasons, we grant defendants' motion for summary judgment in its entirety and dismiss this action against them.

SO ORDERED