35 F.3d 77
 Stephen J. WACHTLER, Plaintiff-Appellant,
v.
COUNTY OF HERKIMER; Gary L. Greene, Trooper; Harry C.
Schlesier, Trooper; Sgt. Panko; Cpl. House; Deputy Allan;
Deputy Epps; Chuck's Towing & Collision Service; Charles
Furner; James W. Smith, Town Justice for the Town of
Winfield; Jacquelyn M. Asnoe, Assistant District Attorney
for the County of Herkimer; John F. Skinner, Town Justice
for the Town of Columbia and John Doe, 7 John Does and/or
Mary Roes, in their private and/or in their official
capacities, jointly and severally, Defendants-Appellees.
 No. 1328, Docket 93-9135.
 United States Court of Appeals,
Second Circuit.
 Submitted April 29, 1994.
Decided Sept. 9, 1994.
 
 Stephen J. Wachtler, pro se.
 Carrie McLoughlin Noll, Amsterdam, NY (Horigan, Horigan, Pennock and Lombardo, P.C., of counsel), for defendants-appellees County of Herkimer, Asnoe, Panko, House, Allan and Epps.
 Burt M. Carrig, Little Falls, NY (Blumberg & Carrig, of counsel), for defendant-appellee Skinner.
 G. Oliver Koppell, Atty. Gen., of Albany, NY (Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., Michael S. Buskus, Asst. Atty. Gen., of counsel), for defendants-appellees Greene and Schlesier.
 John P. Sidd, Syracuse, NY (Devorsetz Stinziano Gilberti & Smith, P.C., of counsel), for defendants-appellees Furner and Chuck's Towing.
 Before: WINTER, ALTIMARI, Circuit Judges, and BREYER, Associate Justice.*
 WINTER, Circuit Judge:
 
 
 1
 Stephen J. Wachtler, pro se, appeals from Chief Judge McAvoy's order dismissing his amended complaint. The complaint asserted numerous federal claims against nineteen defendants, all arising out of an incident in which Wachtler was pulled over for speeding, refused to produce any identification, was subsequently arrested, strip-searched, and spent a night in jail. The district court dismissed or granted summary judgment for the defendants on each of Wachtler's claims. We affirm except as to the County of Herkimer. As to the County, we reverse on Wachtler's claim that he was illegally strip-searched.
 
 BACKGROUND
 
 2
 Assuming Wachtler's factual allegations to be true, the following events gave rise to his claims. At around 11 p.m. on August 26, 1990, as he drove through the Town of Winfield, New York, he was pulled over for speeding by Gary L. Greene, a state police officer in a marked car. Wachtler asked Greene whether he was under arrest. When Greene responded that "technically" Wachtler was under arrest, Wachtler "immediately protected [him]self by invoking his rights," and refused to answer any further questions without the presence of an attorney. Wachtler did not produce a driver's license when asked.[1] Greene then arrested Wachtler for obstructing governmental administration in violation of New York Penal Law Sec. 195.05.
 
 
 3
 After conducting a pat-down search and handcuffing Wachtler, Greene immediately took Wachtler before Judge John F. Skinner, the nearest available judge, in the adjacent Town of Columbia, New York. After learning the nature of the charge, Judge Skinner asked Wachtler to identify himself. When Wachtler again refused to identify himself, Judge Skinner set bail at $250 and warned Wachtler that he would be sent to the county jail if he did not post bail. Judge Skinner told Greene to have Wachtler's car towed, and Chuck's Towing removed the car.
 
 
 4
 Although Wachtler had close to $1000 in cash at the time, he refused to post bail and claimed indigency. After Wachtler completed an indigency form (and thereby identified himself), Greene copied Wachtler's name from the form onto the traffic ticket and handed him a copy of the ticket, which charged Wachtler with violating New York Vehicle & Traffic Law Sec. 1180(d) by driving at 47 m.p.h. in a 30 m.p.h. zone.
 
 
 5
 Upon Wachtler's arrival at the State Police Barracks, Trooper Harry C. Schlesier fingerprinted Wachtler. Wachtler was then taken to Herkimer County Jail where jailhouse officials Panko, House, Allan, and Epps took his photograph. Wachtler was strip-searched in a private location by one male guard. Wachtler was then placed in "solitary confinement" where he stayed until a friend arrived to post bail some fourteen hours later.
 
 
 6
 Upon his release, Wachtler retrieved his car from Chuck's Towing without incident. Wachtler was subsequently prosecuted for speeding, but the matter was dismissed on May 29, 1991 by Judge James W. Smith, Town Justice for the Town of Winfield, because of a violation of the Speedy Trial Act.
 
 
 7
 Wachtler filed a complaint alleging deprivation of his First, Fourth, Fifth, Ninth and Fourteenth Amendment rights, and naming as a defendant every person with any connection to these events. Wachtler seeks declaratory relief, as well as compensatory and punitive damages. Chief Judge McAvoy, in an opinion delivered from the bench, dismissed all of Wachtler's claims. Wachtler now appeals that ruling.
 
 DISCUSSION
 
 8
 Wachtler, referencing papers submitted to the district court, apparently challenges every aspect of the district court's order. However, as explained by Chief Judge McAvoy in his oral ruling, most of Wachtler's allegations either do not state a claim for relief or were properly dismissed on the defendants' motions for summary judgment based on qualified and absolute immunity. We affirm the district court's order for substantially the reasons stated by Chief Judge McAvoy as to all but three issues that merit further discussion.
 
 1. False Arrest
 
 9
 Wachtler claims that the district court's grant of summary judgment to Officer Greene on the ground of qualified immunity was improper. An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991) (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)), cert. denied, --- U.S. ----, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Greene is entitled to qualified immunity as a matter of law so long as he shows that " 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right." Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987) (quoting Halperin v. Kissinger, 807 F.2d 180, 189 (D.C.Cir.1986)).
 
 
 10
 Greene's belief that he had probable cause to arrest Wachtler was entirely reasonable. After having been lawfully pulled over, Wachtler failed to identify himself or to provide any pedigree information necessary for Greene to complete the speeding ticket. Faced with Wachtler's baseless invocation of his "rights," United States v. Adegbite, 846 F.2d 834, 838-39 (2d Cir.1988) (Fifth Amendment rights not implicated by questions concerning pedigree information); United States ex rel. Hines v. LaVallee, 521 F.2d 1109, 1112-13 (2d Cir.1975) (same), cert. denied, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976), Greene had no choice but to arrest Wachtler or irresponsibly let him depart without even a citation for the traffic violation. See People v. Ellis, 62 N.Y.2d 393, 396, 477 N.Y.S.2d 106, 107-08, 465 N.E.2d 826, 827-28 (1984) ("[o]nce it became evident that defendant could not be issued a [traffic] summons on the spot because of his inability to produce any identification, the officers were warranted in arresting him to remove him to the police station").
 
 
 11
 Greene's belief that he had probable cause to arrest Wachtler was well-grounded, although he relied upon the wrong statutory provision. Greene arrested Wachtler for obstructing governmental administration in violation of Section 195.05 of the New York Penal Law. Wachtler may be correct that under New York law he could not be successfully prosecuted for a violation of Section 195.05 absent a showing that he obstructed governmental administration through "physical interference." See People v. Case, 42 N.Y.2d 98, 101, 396 N.Y.S.2d 841, 843, 365 N.E.2d 872, 874 (1977). This, however, is a different question from whether it was objectively reasonable for Greene to believe that he had probable cause to arrest Wachtler.
 
 
 12
 Wachtler was legally obligated to show his driver's license to Officer Greene or else be treated as operating a vehicle without a license. N.Y. Vehicle and Traffic Law Sec. 507 (McKinney 1986). As the New York courts have repeatedly held,
 
 
 13
 [A driver's] failure, upon demand by the officer, to produce a driver's license, [is] presumptive evidence that he was not duly licensed (see, Vehicle and Traffic Law Sec. 507; People v. Griffin, 116 Misc.2d 751, 758, 456 N.Y.S.2d 334). Driving without a license is a traffic infraction which justifies a police officer's immediate arrest of the unlicensed operator.
 
 
 14
 People v. Abrams, 119 A.D.2d 682, 683, 501 N.Y.S.2d 110, 111-12 (2d Dep't 1986); see also People v. Copeland, 39 N.Y.2d 986, 986-87, 387 N.Y.S.2d 234, 355 N.E.2d 288 (1976). See also N.Y. Vehicle and Traffic Law Sec. 401 (McKinney 1986) (when asked for registration, "operator shall furnish to ... police officer any information necessary for the identification of such vehicle and its owner"). Therefore, even if Wachtler could not be arrested for obstructing governmental administration, it was objectively reasonable for Greene to arrest Wachtler, and Greene is entitled to qualified immunity. Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991).
 
 2. Strip-Search
 
 15
 As government officials performing discretionary functions, the individual defendants Panko, House, Allan and Epps, are entitled to plead qualified immunity as an affirmative defense. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). They are shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. Moreover, "[e]ven where the permissible scope of activity is clearly defined, the qualified immunity defense protects an official if it was 'objectively reasonable' for him to believe his acts were lawful." Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990) (citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).
 
 
 16
 Wachtler's amended complaint alleges that he was unlawfully strip-searched "without a Court Order" as a "matter of custom and policy" before being placed in the Herkimer County Jail. Chief Judge McAvoy granted the individual defendants' motion for summary judgment on this claim on the ground of qualified immunity.
 
 
 17
 In Weber v. Dell, 804 F.2d 796 (2d Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987), we held that
 
 
 18
 [T]he Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.
 
 
 19
 Id. at 802. See also Chapman v. Nichols, 989 F.2d 393, 395 (10th Cir.1993); Walsh v. Franco, 849 F.2d 66, 68-69 (2d Cir.1988). As noted, it is undisputed that Wachtler was arrested only for a misdemeanor. See N.Y. Penal Law Sec. 195.05; N.Y. Vehicle & Traffic Law Sec. 1800(a).
 
 
 20
 We have held that the Fourth Amendment proscription of strip-searches of misdemeanor arrestees without reasonable suspicion is clearly enough established to preclude the defense of qualified immunity. See Weber, 804 F.2d at 803-804; Walsh, 849 F.2d at 69. However, we cannot say on the somewhat unique facts before us that it is clearly established that no "reasonable suspicion" justified a strip-search in this case.
 
 
 21
 Weber holds that a strip-search of a misdemeanor arrestee is unlawful where there is no "reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." Weber 804 F.2d at 802. In the present case, we may assume that the crime charged could not give rise to such a suspicion. With regard to the characteristics of the arrestee, the police had, as a result of Wachtler's own conduct, precious little information about him at the time of the strip-search. Indeed, they did not even have the pedigree information to which they were entitled. Wachtler was thus different from the typical misdemeanor-arrestee about whom much is known or is learned from pedigree information. The circumstances of the arrest might arguably have given a reasonable officer cause to suspect that Wachtler was engaged in illegal conduct of a more serious nature than driving without a license. Wachtler's failure to identify himself at the scene of the arrest or in court might have been viewed as evidence of a consciousness of guilt of some unidentified criminal activity. His possession of $1,000 in cash might have seemed a ground for suspecting drug trafficking and the possible presence of contraband. See United States v. 785 St. Nicholas Ave., 983 F.2d 396, 403 (2d Cir.) (large quantity of cash is a factor in linking money to drug transactions), cert. denied, --- U.S. ----, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993).
 
 
 22
 We have found no caselaw that addresses the reasonable suspicion issue in circumstances even remotely similar to those in the instant case. Given those circumstances and the lack of legal authority, we cannot say that the individual officers violated a clearly established right in strip-searching Wachtler. Thus, the individual defendants involved in the strip-search are entitled to qualified immunity.[2]
 
 
 23
 Herkimer County, however, does not have qualified immunity, Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980), and the absence of pertinent caselaw does not allow us to dismiss the County as a defendant. Wachtler has alleged that he was strip-searched as a matter of County policy. See Monell v. Department of Social Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The district court held that Wachtler failed to state a claim against the County because he did not "specify the policy or custom being followed." However, the district court also stated that the individual defendants "simply followed standard procedures for admitting a person to the jail under the order of a judge." If the standard procedure included routine strip-searches of misdemeanor arrestees, absent reasonable suspicion of weapons or contraband, and if no reasonable suspicion concerning Wachtler's possession of such items existed, then Wachtler would prevail. See Weber, 804 F.2d at 802-03. Thus, we cannot say that there is no set of facts provable under Wachtler's complaint that would support his Section 1983 claim regarding the strip-search. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We therefore reverse the dismissal of the County of Herkimer as a defendant.
 
 3. Claim Against Judge Smith
 
 24
 Wachtler claims also that Chief Judge McAvoy improperly dismissed the claim against Judge Smith because Judge Smith was apparently served with process, but never filed an appearance or moved for dismissal of the case. We disagree. "The district court has the power to dismiss a complaint sua sponte for failure to state a claim," Leonhard v. United States, 633 F.2d 599, 609 n. 11 (2d Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), so long as the plaintiff is given notice and "an opportunity to be heard." Thomas v. Scully, 943 F.2d 259, 260 (2d Cir.1991) (per curiam); see also Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir.1988); Wright & Miller, Federal Practice and Procedure Sec. 1357, at 301 & n. 3. Wachtler was given notice that the "defendants" were moving to dismiss or for summary judgment, was allowed to respond by submitting a 150-page legal memorandum in response to the motions, and was given an opportunity for oral argument. Judge Smith's only involvement was to dismiss the speeding case against Wachtler, and there is thus no allegation that Judge Smith caused any injury to him. Moreover, it is absolutely clear that Judge Smith would have been shielded by judicial immunity if Wachtler were injured by his actions in Wachtler's case. Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir.1983). There was therefore no procedural or substantive error in granting the motion to dismiss.
 
 CONCLUSION
 
 25
 We therefore affirm as to all defendants except the County of Herkimer. We reverse as to the County.
 
 
 
 *
 The Honorable Stephen G. Breyer, who was Chief Judge of the United States Court of Appeals for the First Circuit, sitting by designation at the time of argument, has since been appointed Associate Justice, Supreme Court of the United States
 Justice Breyer has been relieved from the panel. Pursuant to this court's Rule Sec. 0.14 the appeal has accordingly been heard and decided by the remaining two judges of the panel, who constitute a quorum.
 
 
 [1]
 Wachtler has subsequently admitted that he did not possess a valid driver's license at the time of his arrest. However, he maintains that he has a right to operate his vehicle in a "not-for-profit" capacity without a driver's license
 
 
 [2]
 We do not reach the issue of whether the strip-search of Wachtler was in fact unconstitutional. We believe that this cannot be determined without a record detailing all the circumstances surrounding the strip-search