**Kenneth G. DIETRICH, et al., Plaintiffs,**

v.

**Richard W. BURROWS,**
**et al., Defendants.**

**No. 3:93 CV 7505.**

United States District Court,
N.D. Ohio,
Western Division.

June 19, 1997.

**1100**

Edward G. Kramer, Kramer & Nierman, Cleveland, OH, for Kenneth G. Dietrich, Brian T. Dietrich, Firelands Investigative Agency, Inc.

Nick Tomino, Reminger & Reminger, Cleveland, OH, for Marie Hildebrandt, William Dwelle, Donald Senne, Lloyd Barcus, James Lang, James A. Jenkins, James Scheid.

Dennis J. Niermann, Edward G. Kramer, Kramer & Nierman, Cleveland, OH, for Brian T. Dietrich.

### MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted on Count I and denied on all other Counts.

### I. BACKGROUND

This is a civil rights action brought by the late Kenneth G. Dietrich,[1] Brian T. Dietrich, and Firelands Investigative Agency, Inc. ("Firelands") against several Perkins Township, Ohio police officers and township trustees, to recover for damages Plaintiffs suffered as the result of Kenneth and Brian Dietrich's September 5, 1991 arrest for carrying concealed weapons.

At all times relevant to this suit, Plaintiff Kenneth Dietrich was a licensed private investigator and the owner of Firelands, a private agency that does investigative and security work, including money courier service. Dietrich had been the chief of Police for Perkins Township from 1971 to 1978. He established Firelands in 1978 and began providing armed money courier service in the fall of 1990. Plaintiff Brian Dietrich was a Firelands employee, and was also a licensed private investigator.

Firelands provided its money courier service in direct competition with several Perkins Township police officers, who moonlighted by providing armed money courier service during their off-duty hours. The officers' courier runs were generally done in Township police vehicles, which they were permitted to use while off duty.

In the fall of 1990, Kenneth Dietrich approached Perkins Township Trustee Marie Hildebrandt to express concern about the Township's practice of permitting off-duty officers to perform money runs in police vehicles. By letter dated January 22, 1991, Hildebrandt asked the Erie County Prosecutor's Office for advice concerning the Township's potential liability for acts committed by uniformed, off-duty officers using police vehicles. The Prosecutor's Office responded on May 21, 1991, advising the Board of Trustees that the Township could be subject to liability, and that the Township's CGL insurance policy probably would not cover the liability. In July and early August, 1991, local newspapers ran a number of articles in which Kenneth Dietrich was quoted as criticizing the policy of police officers performing off-duty money runs in police vehicles. Perkins Township police officers were thereafter prohibited from using police vehicles for off-duty

---

1. Kenneth Dietrich died during the pendency of this action, and his estate has been substituted as a party.

money courier services, effective August 13, 1991.

Thus, Kenneth Dietrich ruffled the feathers of Township officers in three ways. First, he took business away from the officers by providing a competing courier service. Second, he made it more difficult for the officers to provide their own courier services because his complaints led to discontinuance of the previous policy that had allowed Township officers to use police vehicles on their runs. Third, he stirred up controversy in the community by making public his complaints about the officers' practice.

Kenneth Dietrich contends that Defendant Richard W. Burrows,[2] who was Chief of Police at the time, ordered Perkins Township officers to keep Dietrich under surveillance and to report any armed money courier trips. On September 4 or 5, 1991, Officer Gregory Van Richardson reported to Burrows that Kenneth and Brian Dietrich were going to make an armed money courier run on September 5, 1991. At approximately 11:00 o'clock on that morning, the Dietrichs were arrested while in the process of transporting money from Third National Bank to Phar-Mor drug store by Defendant Officers Lloyd Barcus, James Lang, and James Jenkins under the supervision of Defendant Burrows. Each was charged with carrying a concealed weapon and improper transport of a firearm. The charges were dismissed at the request of the prosecutor in February, 1992.

In fiscal year 1991 (November 1, 1990 through October 31, 1991), Firelands' gross receipts were $649,800. In fiscal year 1992 (November 1, 1991 through October 31, 1992), Firelands' gross receipts were $392,780. Kenneth Dietrich filed for personal bankruptcy under Chapter 13 on September 9, 1992.

Plaintiffs filed this lawsuit against Burrows, the arresting officers, and the Perkins Township trustees in September, 1993. All of the defendants were sued both individually and in their official capacities. Plaintiffs allege that Defendants conspired to embarrass Kenneth Dietrich and destroy Firelands' business opportunities. Plaintiffs' amended complaint raises five causes of action. Count I alleges that Defendants knowingly arrested, or conspired to arrest, Plaintiffs without probable cause, and that such arrest caused Plaintiffs to suffer lost profits in violation of the substantive due process clause of the Fourteenth Amendment to the United States Constitution. Count II alleges that the arrest violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure. Count III is a pendent state law claim for false arrest. Count IV is a pendent state law claim for infliction of emotional distress. Count V alleges that Defendants retaliated against Plaintiffs for exercising their First Amendment right to speak out on the issue of off-duty police officers using police vehicles to perform money courier service.

Defendants have moved for summary judgment on all counts. They allege that probable cause existed to arrest Plaintiffs Kenneth and Brian Dietrich, and that probable cause is an absolute bar to Plaintiffs' suit. In the alternative, they argue that they are protected by qualified immunity. Plaintiffs have filed opposition to Defendants' motion, and Defendants have replied thereto. The Court discusses the parties' contentions below.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes

---

**2.** Burrows died during the pendency of this action, and his estate has been substituted as a party.

demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. Probable Cause

■ The first issue before the Court is whether there was probable cause to arrest Kenneth and Brian Dietrich at the time of their arrest. If there was probable cause, Plaintiffs' claims, which rely on the arrest being wrongful, must fail. Probable cause exists whenever "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979).

Defendants allege that the officers had probable cause to believe that the Dietrichs were carrying concealed weapons, and were therefore in violation of Ohio Rev.Code § 2923.12, which provides:

(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon....

(C) It is an affirmative defense to a charge under this section ... that ... [t]he weapon was carried by the actor for defensive purposes, while he was engaged in or was going to or from his lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent man in going armed....

The parties agree that the officers reasonably believed, at the time of the arrest, that Plaintiffs carried deadly weapons concealed on their persons. The record also unequivocally demonstrates that the officers understood that Plaintiffs were carrying such weapons in the course of their occupation as armed money couriers, an occupation that is particularly susceptible to criminal attack.[3]

Defendants argue that probable cause existed because the officers reasonably believed that Plaintiffs' conduct came within the prohibition of § 2923.12. They argue that their knowledge of Plaintiffs' affirmative defense to criminal liability is irrelevant under the rule expressed in an unreported Ohio case, *Weible v. City of Akron,* No. 14878, 1991 Ohio App. LEXIS 2179, 1991 WL 77187 (Ohio App. May 8, 1991). In that case plaintiff Weible, like the Plaintiffs to this action, brought a § 1983 action after her arrest for carrying a concealed weapon. Weible was arrested when an Akron police officer discovered a loaded handgun in her purse. As she was being arrested, she explained to the officer that she carried the gun for protection because she had been raped eight months earlier. Criminal charges against her were subsequently dismissed.

The Ohio Court of Appeals affirmed the state trial court's grant of summary judg-

---

**3.** Ohio Courts universally hold that individuals engaged either in security services or in the transport of large amounts of cash fall within the statutory affirmative defense. *See State v. Doss,* 111 Ohio App.3d 63, 675 N.E.2d 854 (1996); *State v. Assad,* 83 Ohio App.3d 114, 614 N.E.2d 772 (1992).

ment to the City of Akron on Weible's § 1983 claim. It held that there was probable cause to arrest Weible, despite her claim to the officer that she was justified in carrying a weapon, because "[a] police officer is not required to weigh and evaluate the truth of alleged affirmative defenses to a crime before he may act upon probable cause to arrest and charge a defendant."

■ Plaintiffs respond that this case is distinguishable from *Weible* because, unlike the Akron police officer who arrested Weible, the Defendant officers in the case at bar had actual knowledge that Plaintiffs' affirmative defense to a concealed weapons charge was valid. They claim that *Weible* stands only for the proposition that a police officer is not obliged to take an arrestee at her word when she presents an explanation for her conduct.

The Court agrees with Plaintiffs. Probable cause is determined by looking at what the officer knows at the time of the arrest. In *Weible,* the arresting officer knew only that Weible carried a concealed weapon, and had no way of knowing whether to credit her self-defense explanation. In the case at bar, the arresting officers knew that Plaintiffs' justification for carrying the weapons was valid.

The test for probable cause is not whether facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect is committing an act that *would be* a criminal offense but for the fact that the actor has a valid affirmative defense. The test is whether the officer is reasonable in believing that the actor is *in fact* committing a criminal offense. Since the arresting officers had actual knowledge that the Dietrichs had a valid affirmative defense to the crime of carrying concealed weapons, the facts and circumstances did not warrant a belief that the Dietrichs were committing a criminal offense. Therefore, there was no probable cause for arrest.

C. *Qualified Immunity*

■ The second issue before the Court is whether, despite the lack of probable cause, the officers have qualified immunity for their actions. Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1992). The parties do not dispute that the right to be free from arrest without probable cause and the right to speak out on matters of public concern are clearly established constitutional rights of which a reasonable person would have known. A police officer may be entitled to qualified immunity for wrongful arrest even if his probable cause determination is incorrect, however, if a reasonable police officer in his position could have believed that probable cause existed to arrest. *Avery v. King,* 110 F.3d 12 (6th Cir.1997). Thus, the Court must determine whether the defendant officers' probable cause determination was reasonable, even if wrong.

This Court's research indicates that Federal Courts rarely find qualified immunity to be a valid defense to a false arrest in the absence of actual probable cause. To some extent, this may result from the closely analogous standards for true probable cause and a reasonable belief that probable cause exists. As a matter of logic, it is difficult to conceive of an instance in which the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable officer in believing that a prudent person, or one of reasonable caution, would believe, "in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense" (the qualified immunity standard), but in which a reasonably prudent person would not, in fact, believe that the suspect is committing an offense (the probable cause standard). Indeed, the reported cases in which qualified immunity has been found to be a viable defense have generally arisen under circumstances in which the officer had *actual* probable cause to arrest, not merely a *reasonable belief* that probable cause existed. *See, e.g., Avery v. King,* 110 F.3d 12 (6th Cir.1997) (actual probable cause to arrest existed, although for a different offense than the one with which the suspect was charged); *Wachtler v. County of Herkimer,* 35 F.3d 77 (2d Cir.1994) *(actual proba-*

ble cause to arrest existed, although for a different offense than the one with which the suspect was charged); *Hutsell v. Sayre,* 5 F.3d 996 (6th Cir.1993) (actual probable cause for the charged offense existed); *Johnson v. Estate of Laccheo,* 935 F.2d 109 (6th Cir.1991) (actual probable cause for the charged offense existed).

■ The few reported cases in which an arresting officer has been protected by qualified immunity in the absence of actual probable cause have generally arisen where a factual error led to the arrest of an innocent person, and probable cause would have existed but for the factual error. *See, e.g., Pray v. City of Sandusky,* 49 F.3d 1154 (6th Cir. 1995) (arresting officers entered wrong apartment); *Jeffers v. Heavrin,* 10 F.3d 380 (6th Cir.1993) (arresting officer erroneously thought allergy medication was contraband drug); *Atkins v. Lanning,* 556 F.2d 485 (10th Cir.1977) (facially valid warrant had name of wrong person on it). Qualified immunity may also shield an officer from liability for arresting a suspect pursuant to an apparently valid criminal statute or ordinance that is later overturned as unconstitutional. *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

■ Defendants have cited to no case, however, and this Court is aware of none, in which a qualified immunity defense was upheld where the facts available at the time of arrest did not give the arresting officers reason to believe that a crime was being committed. The record in this case is clear. Every officer present at the Dietrichs' arrest knew that the Dietrichs were engaged in a money run at the time they were stopped. There could be no doubt in any officer's mind that the Dietrichs had valid defenses to concealed weapons charges. The defendant officers do not have a valid qualified immunity defense.

### D. The Township Trustees

■ The Township Trustees, Defendants Marie Hildebrandt, William Dwelle, and Donald Senne, have moved for summary judgment on all Counts brought against them in their individual capacities, on the ground that they neither knew of the Dietrichs' arrest until after the fact, nor ratified the officers' actions. Plaintiffs respond that the Trustees' failure to investigate the illegal arrests constitutes a ratification of the officers' action subjecting them to individual liability.

The Court agrees with Defendants. There is no evidence in the record that the Trustees affirmatively ratified the officers' actions. Defendants Hildebrandt, Dwelle, and Senne are dismissed from this case in their individual capacities.

Although the parties have not briefed the matter, the Court notes further that Defendants Dwelle and Senne are no longer serving as Trustees of Perkins Township. Therefore, they are not subject to suit in their official capacities. Defendants Dwelle and Senne are dismissed from this case in their official capacities as well.

### E. Specific Provisions of Plaintiffs' Complaint

#### 1. Count I: Substantive Due Process Claim

Defendants have moved for summary judgment on Count I of Plaintiffs' complaint on two grounds: (1) qualified immunity, and (2) an argument that a plaintiff can bring a § 1983 claim for arrest without probable cause under the Fourth Amendment only, and not the Substantive Due Process provision of the Fourteenth Amendment.

■ Although Defendants' first argument is without merit, as discussed above, their second contention is correct. In *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court held that substantive due process cannot form the basis of a constitutional claim for arrest without probable cause. In that case, plaintiff Albright had been arrested without probable cause, and subsequently brought a § 1983 action in which he alleged a Fourteenth Amendment right to be free from criminal prosecution except upon probable cause. The Court declined to recognize such a right, reaffirming instead that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273, 114

S.Ct. at 813 (internal quotations and citation omitted). Since Plaintiffs have a viable claim under the Fourth Amendment, as it has been applied to the states through the Fourteenth Amendment, their Substantive Due Process claim must be dismissed.

Defendants' motion for summary judgment is granted on Count I of Plaintiffs' amended complaint.

### 2. Remaining Counts

Defendants have moved for summary judgment on the remaining Counts of Plaintiffs' complaint on the ground that probable cause existed to arrest the Dietrichs. Since there was no probable cause, Defendants' motion is not well taken as to those Counts.

█ Defendants' claim that Plaintiffs cannot bring a First Amendment claim because Kenneth Dietrich's statements about potential Township liability if the use of police cruisers for money runs do not relate to "matters of public concern" similarly lacks merit. Statements by a taxpaying citizen voicing concern about the potential liability of his municipality, if an arguably questionable practice continues is a classic matter of public concern. The fact that the complaints aided Kenneth Dietrich's business do not ·convert those statements into matters of mere private concern. Plaintiffs have shown that the Dietrichs were arrested without probable cause three weeks after Kenneth Dietrich's statements caused negative publicity for the police department and a concomitant change in departmental policy relating to the off-duty use of police vehicles. Plaintiffs have made a sufficient showing to withstand a motion for summary judgment on their First Amendment claim.

Defendants' motion for summary judgment is denied on Counts II through V of Plaintiffs' amended complaint.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Defendant Hildebrandt is dismissed from this case insofar as it is brought against her in her individual capacity. Defendants Dwelle and Senne are dismissed from this case in both their individual and official capacities. As to the remaining Defendants, the motion is granted on Count I of Plaintiffs' amended complaint and denied on all other Counts.

IT IS SO ORDERED.