Raymond GAGNE, Plaintiff,

v.

Christopher DEMARCO,
et al., Defendants.

No. CIV.A.3:01 CV 686 (CFD).

United States District Court,
D. Connecticut.

Aug. 26, 2003.

Frederick J. Miano, Westbrook, CT, for Plaintiff.

David S. Monastersky, Beatrice S. Jordan, Howd & Ludorf, Hartford, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Raymond Gagne, brought this action against the Town of Old Saybrook, the Old Saybrook Police Department, and two Old Saybrook police officers, Christopher DeMarco and Steven Bellandese,[1] alleging that the defendants violated certain of his rights under the U.S. Constitution and Connecticut state law.[2] Pending is the defendants' Motion for Summary Judgment [Doc. # 16].

### I. Facts[3]

Since 1980, the plaintiff, Raymond Gagne ("Gagne"), has owned and operated a painting contractor business called "Ray's Painting." Since 1994, Gagne has resided in Old Saybrook, Connecticut. While living in Old Saybrook, Gagne operated "Ray's Painting" out of his residence. In 1997, Gagne purchased a 1979 Ford

---

**1.** Steven Bellandese is incorrectly identified in the caption and complaint as "S. Bellarden."

**2.** The complaint was originally filed in state court and was removed to this Court pursuant to 28 U.S.C. §§ 1441, 1443, and 1446. Personal and subject matter jurisdiction are uncontested.

**3.** The following facts are based on the parties' Local Rule 9(c) Statements and other summary judgment papers and are undisputed unless otherwise indicated.

Econoline van. He registered the van in Conway, New Hampshire, while he was camping there. On each side of the van were "Ray's Painting" and a phone number that rang to Gagne's Old Saybrook residence. Although Gagne maintains that he "frequently kept his van in New Hampshire," it is undisputed that in 2000 the van was most frequently garaged in Old Saybrook and most frequently left from and returned to his Old Saybrook residence.

On April 20, 2000, Old Saybrook police officer Christopher DeMarco ("Officer DeMarco") observed Gagne operating the van with marker plates issued by the state of New Hampshire. Knowing that Gagne had resided in Connecticut for at least two years and possessed a Connecticut driver's license,[4] Officer DeMarco stopped Gagne's van and issued Gagne a summons for violating Conn. Gen.Stat. § 14–12(a)(2), which requires Connecticut residents to register their personal motor vehicles in Connecticut.

On April 29, 2000, Old Saybrook police officer Steven Bellandese ("Officer Bellandese") observed Gagne operating the van and noted that it still had New Hampshire marker plates. Knowing that Gagne had been previously stopped by Officer DeMarco for a vehicle registration violation and that Gagne resided in Old Saybrook,[5] Officer Belandese stopped Gagne's van and issued Gagne a summons for violating Conn. Gen.Stat. § 14–12(a)(2). Officer Bellandese then seized the van's marker plates.

Gagne thereafter registered his van in Connecticut. He appeared in court with the new registration and the two motor vehicle charges against him were nolled on May 8, 2000.

On March 23, 2001, Gagne filed the instant complaint. Gagne's complaint, though unclear at times, appears to allege that, in violation of the U.S. Constitution, the defendants subjected him to false arrest. He also appears to allege state law claims of false arrest, negligence, misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress.[6]

The defendants have filed a motion for summary judgment on the grounds that (1) Officers DeMarco and Bellandese are entitled to qualified immunity on the section 1983 false arrest claim; (2) Gagne fails to allege or provide evidence of municipal liability under *Monell v. Department of Social Services* and thus, his section 1983 false arrest claim against the Old Saybrook Police Department and the Town of Old Saybrook fails; (3) Gagne's state law claim of negligence is barred by the doctrine of governmental immunity; and (4) Gagne fails to state a claim for false arrest, negligence, misrepresentation, negligent infliction of emotional distress, and intentional infliction of emotional distress under Connecticut law.

## II. Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of materi-

---

4. Gagne does not admit that Officer DeMarco had such knowledge, but has not presented any evidence to dispute that Officer DeMarco was a "back-up officer" on the scene when Gagne was arrested in January 1998 in Old Saybrook for driving his van under the influence of alcohol and that Officer DeMarco learned then that Gagne resided in Connecticut. *See* De Marco Aff. at ¶ 11.

5. Again, Gagne does not admit that Officer Bellandese knew Gagne resided in Old Saybrook, but Gagne has not presented any evidence to dispute such. *See* Bellandese Aff. at ¶ 15.

6. Gagne also appears to allege a state law claim of "verbal abuse." However, Connecticut does not recognize such a cause of action.

al fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998) (citation and internal quotation marks omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party has "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## III. Discussion

### A. Section 1983 False Arrest Claim

Pursuant to 42 U.S.C. § 1983, Gagne raises a false arrest claim against each of the defendants relating to his traffic stops and summonses for motor vehicle registration violations on April 20, 2000 and April 29, 2000. The Court will address the claim as it applies to each defendant below.

#### 1. Officers DeMarco and Bellandese

■ The Fourth Amendment to the United States Constitution provides that no person may be subjected to unreasonable seizures. The temporary detention of an individual during an automobile stop by the police, even if only for a brief period, constitutes a seizure within the meaning of the Fourth Amendment.[7] *See Whren v. U.S.,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Therefore, an automobile stop is subject to the constitutional requirement that the seizure not be "unreasonable" under the circumstances. *Id.* However, generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* Generally, probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852. "The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction." *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983).

---

7. Accordingly, though Gagne was not actually arrested on the occasions in question, the Court will analyze his false arrest claim as a claim challenging his "seizure" during the automobile stops.

As noted above, Gagne challenges the constitutionality of his traffic stops and summonses for motor vehicle registration violations on April 20, 2000 and April 29, 2000 for violations of Connecticut General Statute 14–12(a)(2), which provides, in relevant part:

(a) No motor vehicle shall be operated or towed on any highway, except as otherwise expressly provided, unless it is registered with the commissioner ... and provided any motor vehicle which is validly registered in another state may, for a period of sixty days following establishment by the owner of residence in this state, be operated on any highway without first being registered with the commissioner. Except as otherwise provided in this subsection .... (2) a resident of this state who operates a motor vehicle he owns with marker plates issued by another state shall be fined not less than one hundred fifty dollars nor more than three hundred dollars....

Conn. Gen.Stat. § 14–12(a). Gagne argues he should not have been charged under § 14–12(a)(2) because the van was a commercial vehicle only subject to Connecticut General Statute § 14–12a, which provides, in relevant part:

(a) Any motor vehicle eligible for commercial registration as defined in section 14–1, unless exempted under the provisions of section 14–34, shall be registered in this state if: (1) It is most frequently garaged in this state, or, if not garaged at any fixed location, most frequently leaves from and returns to one or more points within this state in the normal course of operations. In the case of an owner-operator of the vehicle in question, registration hereunder shall be required only if the owner-operator has, within this state, one or more employees, agents or representatives engaged in activities directly related to the physical movement of the vehicle, or if the owner-operator is himself engaged in such activities; ... (c) Residence or domicile of the owner, lessor or lessee of the motor vehicle, or the place where the owner, lessor or lessee is incorporated or organized, shall not be a factor in determining the necessity for registration of the vehicle in this state.

Conn. Gen.Stat. § 14–12a. Gagne also maintains that even if he had been charged under § 14–12a, there was no probable cause. The defendants argue that they are entitled to qualified immunity. The Court will address each of these arguments below after a general discussion of qualified immunity.

■ "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The burden of raising and establishing the affirmative defense of qualified immunity, either in a motion for summary judgment or at trial, rests on the defendants. *See Lee v. Sandberg,* 136 F.3d 94, 101 (2d Cir.1997).

■ When considering the issue of qualified immunity, a court must first determine whether the evidence, viewed in the light most favorable to the plaintiff, demonstrates that the officer's conduct violated a constitutional right. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If so, the court must then determine whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would have

underst[ood] that what he [did] violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In essence, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. If the law was clearly established that the officer's conduct violated a constitutional right, qualified immunity is inappropriate. If, however, "the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful," qualified immunity is appropriate. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.

As noted above, Gagne's section 1983 false arrest claim derives from an individual's right to remain free from unreasonable seizures, or seizures absent probable cause. *See Weyant*, 101 F.3d at 852. This right, so broadly defined, was clearly established at the time of Gagne's traffic stops and the two summonses for motor vehicle registration violations. *See Lee*, 136 F.3d at 102. However, the Court's inquiry into the existence of a clearly established right requires a more narrow scope. "[A court] must consider whether a reasonable officer could have believed that the specific action taken by [the defendant] was foreclosed by clearly established law." *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir.2002); *see also Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 ("This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."). Accordingly, the Court must determine whether a reasonable officer could conclude that the circumstances here established the necessary probable cause for Gagne's traffic stops and summonses for motor vehicle registra-

tion violations. *See Weyant*, 101 F.3d at 852.

The Second Circuit has held that "in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause," *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000), because "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause ... and in those situations courts will not hold that they have violated the Constitution." *Id.* at 206, 121 S.Ct. 2151. Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is entitled to qualified immunity. *See Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir.1995) (" '[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials ... should not be held personally liable.' ") (quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034); *see Anderson*, 483 U.S. at 641, 107 S.Ct. 3034 ("The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the ... officers possessed."); *see also Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir.1997) ("A police officer is entitled to qualified immunity shielding him or her from a claim of damages for false arrest where (1) it is objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as

to whether there was probable cause to arrest.").

■ The Court must look to the "totality of the circumstances" in deciding whether arguable probable cause exists to effect an arrest. *See Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994). The Court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. 2317.

■ Here, the undisputed facts demonstrate that it was objectively reasonable for the defendants to believe they had probable cause to stop Gagne and issue summonses for violating Connecticut General Statute § 14–12a. That Officers DeMarco and Bellandese actually cited Gagne under a different statute, Connecticut General Statute § 14–12(a)(2), is inapposite. *See Wachtler v. County of Herkimer*, 35 F.3d 77, 80 (2d Cir.1994).

In *Wachtler*, the Second Circuit found a police officer entitled to qualified immunity despite the fact that the officer charged the plaintiff with a violation of the wrong statute, because the officer had a reasonable belief that probable cause existed for arrest of the plaintiff under the appropriate statute. *See id.* The plaintiff, Wachtler, was stopped for speeding and, upon being pulled over, refused to provide the officer, Greene, with identification. Greene charged Wachtler with obstructing governmental administration in violation of section 195.05 of the New York Penal Law. However, violation of that statute requires "physical interference" as part of the obstruction. *See id.* Wachtler's conduct apparently did not satisfy this element. *See id.* That notwithstanding, the Second Circuit found that Greene could have arrested Wachtler for operating a vehicle without a license in violation of New York Vehicle and Traffic Law § 507[2]. *See id.* Accordingly, the Second Circuit held that "even if Wachtler could not be arrested for obstructing governmental administration, it was objectively reasonable for Greene to arrest Wachtler, and Greene is entitled to qualified immunity." *Id.* at 80–81.[8]

The elements of failure to register a motor vehicle in violation of Connecticut General Statute § 14–12a are: (1) the vehicle was eligible for commercial registration as defined in § 14–1; and (2) the vehicle either is most frequently garaged in Connecticut or most frequently leaves from and returns to one or more points within this state in the normal course of operations. *See* Conn. Gen.Stat. § 14–12a; *State v. Van Eck*, 69 Conn.App. 482, 795 A.2d 582, 594 (2002). "In the case of an 'owner-operator,' registration is required only if the 'owner-operator' is engaged in activities directly related to physical move-

---

**8.** A similar issue is raised where police officers have probable cause to arrest for a lesser-included offense. *See, e.g., Lieberman v. Dudley,* No. 3:95CV2437(AHN), 1998 WL 740827, *5 n. 1 (D.Conn. July 27, 1998). In *Lieberman,* this Court held that:

[p]robable cause requires only a probability or substantial chance of criminal activity. But a finding of probable cause is not contingent on whether the officer articulated the correct basis for the arrest. Thus, the jury was charged in this case that even if the defendants did not have probable cause to arrest the plaintiff for interference with a police officer, the arrest could be found legal if there was probable cause to arrest the plaintiff on the lesser included offense of disorderly conduct.

*Id.; see also Rowe v. City of Rochester,* No. 00–CV–6333 CJS, 2002 WL 31974537 (W.D.N.Y. Dec 23, 2002).

ment of the vehicle. Therefore, the state must also prove, beyond a reasonable doubt, that the defendant was the 'owner-operator' of the vehicle." *Van Eck*, 795 A.2d at 594. Connecticut General Statute § 14–1(12) provides that "commercial registration" means "the type of registration required for any motor vehicle designed or used to transport merchandise, freight or persons in connection with any business enterprise, unless a more specific type of registration is authorized and issued by the commissioner for such class of vehicle." Conn. Gen.Stat. § 14–1(12).

Here, Gagne does not dispute that his van was clearly marked with "Ray's Painting" and Gagne's phone number on both sides. Thus, it would have been objectively reasonable for Officers DeMarco and Bellandese to believe that the vehicle was "designed or used to transport merchandise, freight or persons in connection with any business enterprise" and thus was eligible for commercial registration as defined in Conn. Gen.Stat. § 14–1.

Additionally, Gagne has not presented any evidence to counter the evidence presented by Officers DeMarco and Bellandese that it was reasonable for them to believe his van was most frequently garaged in Old Saybrook or most frequently leaving from and returning to Old Saybrook. Although Gagne maintains that, at times, he took the van to New Hampshire, he does not contest that the "most frequently garaged" and "most frequently leaves and returns to" tests of Conn. Gen. Stat. § 14–12a were satisfied. For example, it is undisputed that Gagne resided in Old Saybrook since at least 1994, *see* Plaintiff's Local 9(c)(2) Statement at ¶¶ 1 and 2, that Old Saybrook police officers saw Gagne operating his van numerous times in Old Saybrook in 1999 and 2000, *see* Gagne Aff. at ¶ 15, and that he operated his painting business out of his Old Saybrook residence, *see* Plaintiff's Local

9(c)(2) Statement at ¶ 10. Moreover, Gagne stated in his deposition that he advertised "Ray's Painting" in the local Connecticut Yellow Pages with a phone number that rang at his residence in Old Saybrook. Finally, Gagne does not dispute that he was an "owner-operator" of the van and was engaged in activities directly related to the physical movement of the van.

Accordingly, in light of the undisputed facts available to Officers DeMarco and Bellandese at the time of Gagne's traffic stops and summonses for motor vehicle registration violations on April 20 and 29, 2000, the Court concludes that, as a matter of law, they had knowledge or reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution in the belief that Gagne had committed the offense of failure to register a commercial motor vehicle in violation of Conn. Gen.Stat. § 14–12a. *See Weyant*, 101 F.3d at 852. In other words, "it was not clearly established that [the defendants] lacked probable cause based on the information available to [them] at the time of arrest." *Caldarola*, 298 F.3d at 166. Again, that they charged him with violation of Conn. Gen.Stat. § 14–12(a)(2) rather than § 14–12a is of no moment. *See Wachtler*, 35 F.3d at 80–81. Therefore, Officers DeMarco and Bellandese are entitled to qualified immunity as to Gagne's § 1983 false arrest claim. *See Lennon*, 66 F.3d at 420.

### 2. Town of Old Saybrook and Old Saybrook Police Department

Although a municipality or a municipal agency may not be liable under § 1983 for the unconstitutional actions of its employees under the doctrine of *respondeat superior*, it may be held responsible for its own conduct caused by unconstitutional policies. "It is when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation. *See Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125, 137 (2d Cir. 1999). A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. A "custom" is a "persistent and widespread discriminatory practice ... so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018 (citation omitted.).

■ The policy or custom "need not be contained in an explicitly adopted rule or regulation," but actions by an official whose edicts or acts represent official policy may result in municipal liability under § 1983. *Wimmer,* 176 F.3d at 137. Thus, if the challenged action is directed by an official with "final policymaking authority," the municipality may be liable even in the absence of a broader policy. *See Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.")). Such a policy may be inferred from circumstantial proof, but the mere assertion that a municipality has such a policy is generally insufficient to support such an inference. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, general-

ly will not suffice to raise an inference of the existence of a custom or policy." *Id.*

Gagne does not allege, nor has he provided any evidence of, a custom or official policy of Old Saybrook or the Old Saybrook Police Department that would subject Old Saybrook to municipal liability. *See Perez v. County of Westchester,* 83 F.Supp.2d 435, 438 (S.D.N.Y.), *aff'd.* 242 F.3d 367 (2d Cir.2000) (dismissing case where plaintiff failed to allege facts supporting policy or custom of county). Nor does he allege or offer evidence that Officers DeMarco and Bellandese possessed "final policy-making authority" for the town of Old Saybrook or the Old Saybrook Police Department. *See Mandell,* 316 F.3d at 385. Accordingly, Gagne' § 1983 false arrest claim against the Town of Old Saybrook and its police department fails as a matter of law.

## B. State Law Claims

The Court further declines to exercise supplemental jurisdiction over Gagne's state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of ...."), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

## IV. Conclusion

For the foregoing reasons, the defendants' Motion for Summary Judgment [Doc. # 16] is GRANTED. The Clerk is directed to close the case. The Clerk is

also directed to mail a copy of this decision to the plaintiff at his current address.